SCHEUER et al. v. SMITH & MONTGOMERY BOOK & STATIONERY CO.

(Circuit Court of Appeals, Fifth Circuit. December 17, 1901.)

No. 1,106.

1. BANKRUPTCY—CORPORATIONS—ACTS OF BANKRUPTCY.

Where a corporation while insolvent has suffered and permitted some of its creditors to obtain preferences through legal proceedings, and then its stockholders and officers sue for and obtain a dissolution for the express purpose of hindering and delaying creditors, and the effect of such proceedings is to permit the preferences obtained to stand in full

force, and to actually hinder and delay other creditors, it has committed an act of bankruptcy, within the meaning of Bankr. Act 1898, § 3a, cl. 3, by permitting effective preferences to be fastened upon its property.

**2. SAME—DISSOLUTION OF CORPORATION PENDING PROCEEDINGS.**

Petitioning creditors of a corporation, which has committed an act of bankruptcy by suffering and permitting certain creditors to obtain preferences through legal proceedings while it was insolvent, are not debarred from the right to have it adjudicated a bankrupt by the fact that pending the proceedings a decree dissolving the corporation was entered by a state court, which had taken possession of its property through a receiver. Section 8 of the bankruptcy act relating to the death · or insanity of a bankrupt is by analogy applicable to a corporation which seeks by a dissolution to defeat the proceedings in bankruptcy, and, even if the state court should refuse to recognize the paramount jurisdiction of the bankruptcy court, the adjudication would operate to render the preferences void, and entitle all creditors to share ratably in the assets of the corporation.

Appeal from the District Court of the United States for the Northern District of Alabama.

This is a case in bankruptcy, the petition having been filed by the appellants, creditors, to adjudge the appellee, the Smith & Montgomery Book & Stationery Company, a business corporation under the laws of Alabama, a bankrupt; alleging in the petition, and in an amended petition, the following acts as of bankruptcy alleged to have been committed by appellee: (1) The said bankrupt suffered or permitted, while insolvent, certain creditors to obtain preferences through legal proceedings; (2) that said bankrupt made payments, while insolvent, to certain creditors named, with intention to prefer such creditors; (3) while insolvent, the filing of a petition for the appointment of a receiver in the state court, "in order to protect and preserve the property of said company from the attacks of creditors," which operated to hinder, delay, and defraud creditors.

Appellee filed an answer to said petition, (1) setting forth, while not specifically denying insolvency, that it had not while insolvent committed any of the acts of bankruptcy alleged; and (2) setting up the affirmative defense "that the chancery court of Jefferson county, Alabama, having taken jurisdiction of the dissolution proceedings, and having appointed a receiver for the purpose of winding up the estate of the defendant therein, the bankruptcy court has no jurisdiction in said matter, and will not interfere with the jurisdiction and possession of the property, which is now in the hands of the state chancery court." Exceptions were filed by petitioners to said answer. Among the grounds stated for said exceptions were that said answers do not state what payments were made to preferred creditors, said answers do not deny that it was insolvent, and that the appointment of said receiver and said chancery court proceedings are no bar to this petition.

The facts of the case developed on the hearing and proven are that appellee, on the 21st day of June, 1901, being insolvent, entered into an agreement with four of its creditors, Raphael Tuck, Sons & Co., Houghton, Mifflin & Co., C. F. Rumph & Sons, and Favor, Ruhl & Co., whereby said creditors were permitted to and did take judgments in the city court of Birmingham, Ala., for their respective debts, the same having the force and effect of liens, it being provided in said agreement that said judgments might be paid in four equal payments, the first due July 1, 1901, and one payment every 30 days thereafter, until the other three payments were made; that appellee made all the payments on said judgments, as provided in said agreement, up to the time of the receivership hereinafter stated; that on September 3, 1901, a petition was filed in the chancery court for Jefferson county, Ala., to dissolve the Smith & Montgomery Book & Stationery Company, and for the appointment of a receiver until a decree of dissolution could be had, said petition, among other things, alleging "that, in order to protect and preserve the property of said company from the attacks of creditors of the Smith & Montgomery Book & Stationery Company, * * * it is necessary

that a receiver be appointed," etc.; that on the 4th day of September, 1901, the president of said corporation filed an affidavit in said chancery court, urging substantially the same reasons for the appointment of a receiver; that on the 4th of September, 1901, John H. Miller was appointed receiver by decree of said chancery court, and took possession of the assets of said Smith & Montgomery Book & Stationery Company; that on September 5, 1901, the petitioners in this case filed their petition to adjudge said appellee a bankrupt; and that on September 28, 1901, after an answer was filed in said state chancery court proceedings admitting a willingness therefor, a decree was rendered dissolving said Smith & Montgomery Book & Stationery Company.

The trial judge "found, upon the facts, that said Smith & Montgomery Book & Stationery Company was insolvent, within the meaning of the said bankruptcy act, but that said company had not committed any one of the three acts of bankruptcy alleged; that the proceedings in the chancery court were not a transfer made with the purpose to hinder and delay creditors, within the meaning of the bankruptcy act; that the judgments rendered, described in the petition, were not judgments suffered, and did not constitute an act of bankruptcy, and that the payments afterwards made to said creditors were not made with intent to prefer said creditors, and thereupon an order or decree was entered upon in said cause, refusing to adjudge said respondent, the Smith & Montgomery Book & Stationery Company, a bankrupt, and dismissing the petition." The finding of the court and the decree rendered thereon were excepted to by the petitioning creditors, who have sued out this appeal.

John W. Tomlinson, for appellants.

R. H. Thach and John H. Miller, for appellee.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge (after stating the facts as above). The case shows that the Smith & Montgomery Book & Stationery Company, while insolvent and within four months preceding the filing of the petition to adjudge the said company a bankrupt, suffered and permitted certain of its creditors to obtain judgments through legal proceedings, which judgments, until vacated or discharged, constitute unlawful preferences, within the intent and meaning of the bankruptcy act, and that it took no proceedings to vacate or discharge the illegal preferences thus obtained, except so far as to pay some installments of the judgments as agreed. The case further shows that, before all the installments of the preference judgments aforesaid were paid, the stockholders of the insolvent corporation brought a suit in the state chancery court, asserting their wish that the corporation should be dissolved, and in their petition made the following statements:

"Petitioners further show unto your honor that in order to protect and preserve the property of said company from attacks of creditors of the Smith & Montgomery Book & Stationery Company, and for the purpose of preventing a multiplicity of suits and wasting the property of the said corporation, it is necessary that a receiver be appointed pending a hearing of the petition of dissolution. Suits have been brought against said company, in some of which judgments have been rendered for considerable sums, and in which execution may issue at once, and some are still pending, and in other cases there is a probability that attachments may be sued and levied on."

In this suit a receiver was at once appointed, and without much delay a judgment of dissolution was obtained, the effect of which

was to put it entirely out of the power of the corporation to vacate or discharge the illegal preferences obtained through the judgments aforesaid against the corporation.

It is contended that suffering the recovery of the alleged preference judgments was not an act of bankruptcy, within the intent and the meaning of the third subdivision of section 3a of the bankrupt act of 1898, because the corporation had no defense to make to the creditors' claims, and after some dilatory pleas only agreed that they might take judgment at the very time they could and would have taken it without the corporation's assent, and that by the assent and agreement made the corporation obtained a stay of execution which was beneficial, and that the payments of some of the installments as they became due were steps taken to discharge whatever preference was given by the judgment. Against this contention it may be suggested with very great reason that the payment of a debt illegally preferred with the funds of an insolvent tends to make the preference suffered or permitted more effective than if the preferred creditor should be driven to seizure and sale on execution; that such payment ought not to be considered in any just sense as the vacating or discharging of a preference within the intent and meaning of the third subdivision of section 3a of the bankrupt act. It is contended that a suit by all the stockholders to procure the liquidation of an insolvent corporation under state laws is not equivalent to a general assignment for the benefit of creditors, and therefore cannot be considered an act of bankruptcy, within the meaning of either the fourth or fifth subdivisions of section 3a of the act of 1898.

There are some highly respectable authorities which support this view. See In re Empire Metallic Bedstead Co., 39 C. C. A. 372, 98 Fed. 981. As the proposition is stated, we are not called on to question it, but we consider that where a corporation while insolvent has suffered and permitted some of its creditors to obtain preferences through legal proceedings, and then its stockholders and officers sue for and obtain a dissolution for the express purpose of hindering and delaying creditors, and the effect of the proceeding is to permit the alleged preferences to stand in full force, and to actually hinder and delay other creditors, then an entirely different case is presented, and one of illegal preference, which seems to be within the intention and spirit of section 3a of the bankrupt law, if not strictly within the letter thereof. We consider that under said clause it is practically immaterial whether the insolvent debtor consents to and facilitates the obtaining of a preference through legal proceedings or actively opposes the same. In either event, the result is the same to creditors, and the words used in the statute, "suffered or permitted," do not involve any intent on the part of the insolvent.

In Re Moyer (D. C.) 93 Fed. 188, Judge McPherson, in dealing with this subject, says:

"But, as we understand the bankrupt act of 1898, its provisions are essentially different from the earlier act, and require the court to come now to a different conclusion. Clause 3 of section 3 declares that it shall be an act

of bankruptcy if a person has 'suffered or permitted while insolvent, any creditor to obtain a preference through legal proceedings, and not having at least five days before a sale or final disposition of any property affected by such preference, vacated or discharged such preference.' It will be observed that this clause says nothing about the bankrupt's intent to enable the creditor to secure a preference; neither does it use the word 'procure,' which might seem to imply that the debtor must take some part in bringing the preference about. The dominant fact seems to be the actual result that has been attained by the creditor. If, through legal proceedings, he has succeeded in obtaining a preference,—that is (referring to section 60 for a description of preferred creditors), if the debtor is insolvent, and has either 'procured or suffered a judgment to be entered against himself, * * * and the effect of the enforcement of such judgment * * * will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class,'—if this is the actual result of legal proceedings taken against an insolvent debtor, the clause in question requires the debtor to vacate or discharge such preference within a specified time, and, if he fails so to do, declares that he has committed an act of bankruptcy."

And it is instructive to read what in the same case the learned judge says as to the debtor's duty in regard to vacating or discharging the preferences suffered or permitted:

"Legal proceedings are of many kinds, differing in the different states; but, whatever kind may be employed by the creditor, if the result of the proceeding gives him a preference over other creditors of the same class, the insolvent debtor is thereupon charged with a clearly implied duty to vacate or discharge the preference within the time allowed him by the act. For example, if he has a defense to the debt, he may set it up; or, if he can overthrow the preference because the creditor's procedure has been defective, he may choose that method of attack. If neither of these weapons is available, he has still at command one sufficient weapon, of which he cannot be deprived. He can apply promptly to the court in bankruptcy, and ask that his property should be ratably divided among his creditors. If he fails to move, his inaction is properly regarded as a confession that he is hopelessly insolvent, and as conclusive proof that he consents to the preference that he has declined to strike down. This construction of the statute seems to us to be the natural meaning of the clause in question, and to be in harmony with the general purpose of the act. A similar conclusion was reached a month or two ago in the district court for the Eastern district of Missouri in Re Reichman (D. C.) 91 Fed. 624."

Neither in Moyer's Case nor Reichman's Case is it suggested that the insolvent debtor may procure the vacation or discharge of the preferences suffered or permitted by paying off the same in cash or property belonging to his estate.

In the case now under consideration we do not find it necessary to hold that the insolvent corporation committed an act of insolvency in suffering or permitting certain creditors to obtain judgments in manner and form as developed by the evidence, nor that the proceedings instituted by the insolvent corporation procuring a decree of dissolution in the state chancery court in manner and form as developed by the evidence of itself constituted an act of bankruptcy, but we do consider that the two together, producing the result that preferences were obtained through legal proceedings, and that by the voluntary dissolution the insolvent debtor put it out of his power to procure the vacating or discharging of such preferences, accompanied by the intent expressed in the petition for

dissolution, i. e., the hindering and delaying of other creditors, did constitute an act of bankruptcy, within the meaning of section 3a of the bankrupt act, and warrant and require in this proceeding the adjudication of bankruptcy, as prayed in the lower court.

It is argued that even if this be the case, as the dissolution of the corporation has been adjudged and decreed in the state court prior to the hearing, although since the institution of the proceedings in the bankrupt court, such proceedings abated, and no adjudication in bankruptcy should be rendered, as the corporation is dead, and no judgment can be rendered against a dead man. As to this, we think it only necessary to refer to section 8 of the bankrupt act in relation to the death or insanity of the bankrupt, and by analogy hold, that the section applies to a corporation that seeks by suicide to defeat properly instituted proceedings in bankruptcy. In opposition to the adjudication, it has been very vigorously insisted in this court that the adjudication in bankruptcy should not be rendered, because the state chancery court, through its receiver and under the judgment of dissolution, has taken possession of all the property of the corporation, and that by reason of the comity which does and ought to prevail between courts of the states and courts of the United States the adjudication in bankruptcy can result in no administration or other beneficial effect. For the purposes of this case, we may concur with the learned counsel in his views on this matter of comity, but we are of opinion, notwithstanding, that the petitioning creditors have the right to have their insolvent debtor adjudged a bankrupt, if for no other reason still for the purpose of insisting upon the application of the provisions of the bankrupt law annulling preferences in certain cases.

Section 67f of the act of 1898 reads:

"That all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment, or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt, unless the court shall, on due notice, order that the right under such levy, judgment, attachment, or other lien shall be preserved for the benefit of the estate; and thereupon the same may pass to and shall be preserved by the trustee for the benefit of the estate as aforesaid. * * *"

Even if the state court shall, on proper application, refuse to deliver over the estate of the corporation to the trustee in bankruptcy, which may be properly requested of the state court by the trustee on the ground that, under the bankrupt law of the United States, which is paramount to the insolvency and liquidation laws of the state of Alabama, the bankruptcy court has exclusive jurisdiction in the administration and settlement of the bankrupt's estate, still the trustee may intervene in said proceedings in the state court, and pray that the provisions of the bankrupt law applicable to the administration of the estate of the insolvent and defunct corporation shall be applied in behalf of the general creditors, and thereby procure a ruling in the state court annulling the preferences

herein complained of, or other rulings in harmony with the bankrupt laws of the United States.

For these reasons the order and decree appealed from is reversed, and the cause is remanded to the district court of the Northern district of Alabama, with directions to render a decree adjudging the Smith & Montgomery Book & Stationery Company to be a bankrupt, and thereafter to proceed in accordance with law and the views expressed in this opinion.

The costs of this court in this proceeding are adjudged against the Smith & Montgomery Book & Stationery Company, to be paid in due course of administration.