### In re INTERNATIONAL COAL MINING CO.

(District Court, E. D. Pennsylvania. February 21, 1906.)

#### No. 2, 398.

1. BANKRUPTCY—CORPORATIONS—EFFECT OF STATE INSOLVENCY LAW.

Act Pa. April 7, 1870 (P. L. 58), which provides that on return of an execution against a corporation of certain classes unsatisfied the judgment creditor may procure a special writ of fieri facias on which all the property of the corporation. except real estate held in fee, shall be sold and the proceeds distributed by the sheriff among all its creditors as provided in Act Pa. June 16, 1836 (P. L. 775), is in effect an insolvency law and proceedings thereunder cannot defeat the operation of the bankruptcy law. While such proceedings do not give the creditor a preference so as to constitute an act of bankruptcy under Bankr. Act July 1, 1898, c. 541, § 3a (3), Stat. 546 [U. S. Comp. St. 1901, p. 3422], they result in placing the sheriff as a receiver or trustee in charge of the property of the corporation because of its insolvency which constitutes an act of bankruptcy under section 3a (4) as amended by Act Feb. 5, 1903, c. 487, § 2, 32 Stat. 797 [U. S. Comp. St. Supp. 1905, p. 683].

[Ed. Note.—Effect of national bankruptcy act on state insolvency laws and assignments for benefit of creditors, see note to Carling v. Seymour Lumber Co., 51 C. C. A. 11.]

**2. SAME.**

> Proceedings under Act Pa. April 7, 1870 (P. L. 58), by which all of the property of an insolvent corporation is sold under a special writ of fieri facias for distribution among its creditors does not work a dissolution of the corporation so as to defeat subsequent bankruptcy proceedings against it, based on such proceedings as constituting an act of bankruptcy, or disenable its directors to admit its insolvency and its willingness to be adjudged a bankrupt which constitutes an act of bankruptcy under .Bankr. Act July 1, 1898, c. 541, § 3a (5), 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422].

In Bankruptcy. On petition in insolvency proceedings and answer of creditor.

Wessel & Aarons, for petitioning creditor.
Boyd Lee Spahr, for objecting creditor.

HOLLAND, District Judge. On July 14, 1905, a writ of fieri facias, on a judgment obtained by the Cresson & Clearfield Coal & Coke Company, was issued against the alleged bankrupt, which was returned unsatisfied. Whereupon the judgment creditor filed a petition under the Pennsylvania act of April 7, 1870 (P. L. 58), and the common pleas court of Philadelphia directed the issuance of a special writ of fieri facias authorized by this act, under which the sheriff seized upon the bankrupt's property and duly advertised for sale the "franchise right to be a corporation, together with all property, real, personal and mixed, and all book accounts, claims, choses in action, causes in action arising out of contracts, torts, or penalties, and assets of every description belonging to or any way appertaining to the International Coal Mining Company, excepting only lands held in fee," and on the 29th day of September, 1905, sold the same to P. H. Walls for the sum of $40. The costs of the said proceedings were $25.92, which are retained by the sheriff, and the balance, $14.08, is distributable pro rata among all the creditors of the International Coal Mining Company under the seventy-fourth section of the Pennsylvania act of June 16, 1836 (P. L. 775). It does not appear, however, that this distribution has been made.

On December 5, 1905, an involuntary petition in bankruptcy was filed against the alleged bankrupt, setting forth as one of the acts of bankruptcy the execution and sale of the alleged bankrupt's property above mentioned, and its failure to vacate or discharge this alleged preference. It is also alleged in the petition that on the 25th day of November, 1905, the International Coal Mining Company admitted in writing its inability to pay its debts, and its willingness to be adjudged a bankrupt on that ground. The Cresson & Clearfield Coal & Coke Company, in due season, objected to the International Coal Mining Company being adjudged a bankrupt, for the reason that the sale under the special fi. fa. authorized by the Pennsylvania act of 1870, supra, worked under the laws of Pennsylvania a dissolution of the corporation, and at the time of filing the petition in bankruptcy it had no legal existence, and further, that the equal distribution required under the seventy-fourth section of the act of June 16, 1836, in effect prevented the preference, which is prohimited by Bankr. Act July 1, 1898, c. 541, § 3, subd. 3, 30 Stat. 546

[U. S. Comp. St. 1901, p. 3422] and there was consequently no commission of this act of bankruptcy. It is further contended that on November 25, 1905, when the alleged bankrupt corporation, through its board of directors, admitted in writing its inability to pay its debts and itse willingness to be adjudged a bankrupt, that it had no legal existence, and this act of the board of directors is a nullity.

Prior to the passage of the act of April 7, 1870, supra, a return of "unsatisfied in part or in whole" to an execution against certain corporations entitled the plaintiff in the judgment, upon petition, to have a sequestrator appointed, whose duty it was to distribute the net proceeds of the property among all the creditors of such corporation according to the rules established in the case of insolvency of individuals, and such sequestrator was accorded all the powers and was subject to all the duties of trustees appointed under the law relating to insolvent debtors. The fi. fa. which this act of 1870 authorizes, after the insolvency of the corporation is established by a return of nulla bona, is in lieu of the provisions or proceedings by sequestration under the seventy-fourth section of the act of 1836—P. L. 775 (Appeal of Philadelphia & Baltimore Central Railroad Co., 70 Pa. 355)—and the duties of the sequestrator are performed by the sheriff, who is still required to make an equal distribution of the proceeds of sale to all the creditors of the insolvent corporation. Bayard's Appeal, 72 Pa. 453.

The proceeding in effect, beginning with an execution, a return thereto, establishing the insolvency, followed by a sale of all the property of the insolvent corporation on the special fi. fa. under the act of April 7, 1870, and an equal distribution among creditors of the corporation, is nothing more or less than a state insolvent law for the purpose of administering the property of insolvent corporations. It is made an act of bankruptcy to put a receiver or trustee in charge of the property of a corporation under state laws by section 3, subd. 4, and the substitution of the sheriff to effect the same result will not defeat the provisions of the act. In this proceeding, the property of the insolvent corporation is not placed in the hands of a receiver or trustee by that name, but it is so in effect, because the sheriff, after a sale of the property on execution, is required to distribute the net proceeds among the creditors of the corporation according to the rules established in cases of insolvency of individuals, and the same as a receiver or trustee would have been required to do under the law relating to insolvent debtors in the state.

The placing of the insolvent corporation's property in the hands of a receiver or trustee under the state laws is not charged as one of the acts of bankruptcy in the creditor's petition, and an adjudication cannot be entered for that reason as the record now stands, and we do not think that the execution and sale of the property and the distribution of the proceeds in this proceeding is an act of bankruptcy set forth in section 3, subd. 3, of the bankrupt act because there is no lien created by the levy (Bayard's Appeal, supra), and no creditors will obtain a preference, but the admission in writing by the board of directors of the inability of the corporation to pay its debts and its willingness to be adjudged a bankrupt is set forth as an act

of bankruptcy which will entitle the creditors to an adjudication, if, for the purposes of the bankrupt law, they had authority to pass upon this question. We think they had. The bankrupt law is paramount to all the state insolvent laws, and where the effect of enforcing the state law is to defeat the object of the provisions of the bankrupt act, that part of the state law must yield to the provisions of the latter.

To concede the contention of the respondent here, that the sale of the property of the alleged bankrupt by the sheriff of Philadelphia county on this peculiar writ worked a dissolution of the corporation so that proceedings in bankruptcy could not be instituted against it, would "result in the anomalous situation that the commission of an act of bankruptcy would prevent the bankrupt act from taking effect." But even under the act of 1870 the corporate existence does not entirely disappear upon the sale of the property and franchises upon an execution under that act, because the act "excepts land held in fee" from sale on the special fi. fa., "which must be proceeded against and sold in the manner provided for in cases for the sale of real estate." The title to this excepted real estate must remain in the corporation until sold, and a dissolution cannot take place so long as this asset exists, even under that act. But even if this were not so, the bankrupt act would so far control the matter of dissolution of the insolvent corporation as to prevent its legal extinction by superseding all state laws in conflict with its provisions to an extent necessary to enable creditors of insolvent corporations to have the assets of their insolvent debtor administered in accordance with its terms. Scheuer v. Book Co., 7 Am. Bankr. Rep. 384, 112 Fed. 407, 50 C. C. A. 312; In re Storck Lumber Co. of Baltimore, 8 Am. Bankr. Rep. 86, 114 Fed. 360; In re Hercules Atkin Co., Ltd., 13 Am. Bankr. Rep. 369, 133 Fed. 813.

The objections in the answer are overruled, and the clerk is directed to enter an adjudication.