## In re TUPPER.

### (District Court, N. D. New York. July 17, 1908.)

**1. JUDGMENT—LIEN—REAL ESTATE.**

Under the New York law, a judgment becomes a lien on real estate on the date it is docketed in the county where the real estate is situated and remains a lien for 10 years, irrespective of the issuance of an execution, a levy, sale, or advertised sale.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 30, Judgment, § 1332.]

**2. BANKRUPTCY—ACTS OF BANKRUPTCY—PETITION.**

A petition, charging that defendant had transferred her interest in certain real estate by way of security by permitting a judgment to be docketed against her in the county where the real estate was situated, was insufficient, without an allegation that this was done with intent to hinder, delay, or defraud her creditors or any of them; the act of bankruptcy defined by Bankr. Act July 1, 1898, c. 541, § 3, subd. 1, 30 Stat. 545 (U. S. Comp. St. 1901, p. 3422), declaring that a transfer of property with intent to hinder delay or defraud creditors shall constitute an act of bankruptcy.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 118.]

**3. SAME—PREFERENCE.**

A bankruptcy petition, charging that defendant transferred her interest in certain property by way of security by permitting a judgment to be docketed against it, but, failing to allege that this was done by defendant with intent to prefer the judgment creditors, did not charge an act of bankruptcy under Bankr. Act July 1, 1898, c. 541, § 3, subd. 2, 30/Stat. 545 (U. S. Comp. St. 1901, p. 3422), declaring that a transfer by a debtor, while insolvent, of any portion of his property with intent to prefer such creditors over other creditors, shall constitute an act of bankruptcy.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 118.]

**4. SAME—"PREFERENCE"—"TRANSFER."**

Bankr. Act July 1, 1898, c. 541, § 60, 30 Stat. 562 (U. S. Comp. St. 1901, p. 3445), declares that a person shall be deemed to have given a "preference," if, being insolvent, he has, within four months before the filing of the petition, or after the filing of the petition and before adjudication, procured or suffered a judgment to be entered against himself in favor of any person or made a transfer of any of his property, the effect of which will be to enable one creditor to obtain a greater percentage of his debt than other creditors of the same class. Section 1, subd. 25 (30 Stat. 545 [U. S. Comp. St. 1901, p. 3420]), declares that a "transfer" shall include the sale and every other and different mode of disposing of or parting with property or the possession of property absolutely or conditionally as a payment, pledge, mortgage, gift, or security. Section 3, subd. 3 (30 Stat. 5406 [U. S. Comp. St. 1901, p. 3422]), provides that a person shall commit an act of bankruptcy if he has suffered or permitted any creditor to obtain a preference through legal proceedings and not having, at least five days before a sale or final disposition of any property affected by such preference, vacated or discharged the same. *Held,* that where a debtor, while insolvent, permitted certain creditors to recover and docket a judgment against her in the county, in which she had an equity in real estate, and such judgment was permitted to remain a lien until one day before the expiration of four months from the date it was so docketed, and on the expiration of such time it would have become an absolute security for the debt, it constituted a preference and an available act of bankruptcy.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 6, pp. 5498–5499; vol. 8, pp. 7759, 7064–7070, 7819.]

**5. SAME—"FINAL DISPOSITION."**

Bankr. Act July 1, 1898, § 3, subd. 3, c. 541, 30 Stat. 546 (U. S. Comp. St. 1901, p. 3422), provides that a person shall have committed an act of

bankruptcy by having suffered or permitted, while insolvent, any creditor to obtain a preference by legal proceeding and not having at least five days before a sale or final disposition of any property affected by such preference vacated or discharged it. *Held*, that the term "final disposition," as so used, did not mean a gift of the property to some third person or a voluntary transfer to the creditors in satisfaction of a preferential judgment, but included every other method than that specified of passing the control and dominion of the property of the insolvent debtor to another or others either absolutely or as security to the preferred creditor to the exclusion of his other creditors.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 3, p. 2798.]

Geo. S. Raley, for bankrupt.
Henry W. Williams, for creditor.

RAY, District Judge. About March 7, 1908, and prior to March 8, 1908, the First National Bank of Glens Falls, N. Y., a creditor of the above-named Abbie Tupper to the amount of $2,987, besides interest, filed a petition in involuntary bankruptcy against her praying that she be adjudged a bankrupt.

The petition sets out all necessary facts with sufficient detail and exactness, unless it be that it fails to charge an act of bankruptcy. The alleged bankrupt interposes a demurrer challenging the sufficiency of this allegation, which is as follows:

"(7) That within four months preceding the date of the filing of this petition, viz., on the 8th day of November, 1907, the said Abbie Tupper, while insolvent, committed an act of bankruptcy, in that she did, on said date, suffer and permit the said Pardo & Hogan to obtain a preference through legal proceedings, and did not, at least five days before the final disposition of the property affected by such preference, vacate or discharge said preference. That said Abbie Tupper, at said time, was and now is the owner of a house and lot at No. 122 Crandall street, in the village of Glens Falls, of the reasonable worth and value of $2,500 incumbered only, prior to said date, by a mortgage of $1,500, leaving an equity owned by said Abbie Tupper, in said real estate, of $1,000. That on said 8th day of November, 1907, the said James Pardo and Daniel J. Hogan recovered a judgment in the Supreme Court of the state of New York for the county of Warren, in which county said real property is located, and that the said judgment roll in said action was duly filed in the Warren county clerk's office, and said judgment duly docketed therein, on said day. And that, under the laws of the state of New York, the said judgment thereupon became a lien against the aforesaid real estate, viz., the equity of said Abbie Tupper in the said property at No. 122 Crandall street, Glens Falls, N. Y.

"(8) That said judgment of Pardo & Hogan has not been paid, satisfied, vacated, or discharged. That the same constitutes an illegal and unlawful preference in bankruptcy, in favor of said Pardo and said Hogan, of the property of said Abbie Tupper, and to the detriment of your petitioner. And that such preference will become absolute, and will be unavoidable by a trustee in bankruptcy on the 8th day of March, 1908, unless this petition is filed between said date and five days previous thereto."

The act of bankruptcy charged is: That on the 8th day of November, 1907, the said Abbie Tupper, while insolvent, suffered and permitted James Pardo and Daniel J. Hogan, creditors, constituting the firm or copartnership of Pardo & Hogan, to obtain a preference through legal proceedings and did not, at least five days before the final disposition of the property affected by such preference, vacate or discharge such preference; that said Abbie Tupper then was and

still is the owner of a house and lot in Glens Falls, Warren county, N. Y., worth $2,500, then incumbered by a mortgage of $1,500, leaving her equity thereon of $1,000; that on the said 8th day of November 1907, the said Pardo & Hogan recovered a judgment in the Supreme Court of the state of New York against said Abbie Tupper and duly filed the judgment roll and docketed said judgment in the county of Warren, N. Y., where said real estate is situated, and such judgment thereupon on such day became a lien on such real estate; that the said judgment has not been paid, satisfied, vacated, or discharged; that the same constitutes an unlawful preference, in bankruptcy, by way of a lien in favor of said Pardo & Hogan upon the property of the alleged bankrupt to the detriment and injury of the petitioner; and that such lien would become absolute and unavoidable by a trustee in bankruptcy March 8, 1908.

There is no allegation in the petition that an execution has been issued on such judgment and returned unsatisfied, or that any execution has been issued, or any levy made on such property, or that it has been advertised for sale on execution, or that any attempt has been made to enforce such judgment. Under the laws of the state of New York, such a judgment becomes a lien on real estate on the day of its docket in the county where the real estate is situated, and remains a lien for 10 years, entirely irrespective of the issuance of an execution, a levy, or a sale, or an advertised sale.

By section 60 of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]):

"A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition, or after the filing of the petition and before adjudication, procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class."

That the enforcement of this judgment against this judgment debtor will have this effect is not questioned, and, indeed, it cannot be. That Tupper has given a preference is very clear, for she has suffered a judgment to be entered against herself in favor of these creditors.

By subdivision 25 of section 1 of the act:

"Transfer shall include the sale and every other and different mode of disposing of or parting with property, or the possession of property, absolutely or conditionally, as a payment, pledge, mortgage, gift or security."

It follows that allowing a judgment to be taken and docketed, thereby creating a lien and a security for the debt, may constitute a transfer, for it would be or might be a disposition of real property by way of security. Aside from the mode of enforcement and the right to redeem after a sale and the time of redemption, it is in New York just as effectual by way of security for a debt as a recorded mortgage. It constitutes a lien on the property good as against all claims, except purchase money and unrecorded mortgages given in good faith and for a valuable consideration whether execution is issued or not. It follows that a debtor may give his creditor security on his real es-

tate by allowing and permitting him to obtain and docket a judgment, within the meaning of the bankruptcy act. Section 3 of the act defines and enumerates "acts of bankruptcy." Even if Tupper has transferred her interest in this real estate by way of security by permitting this judgment, there is no allegation that it was done with intent to hinder, delay, or defraud her creditors or any of them. Hence the petition does not charge the first act of bankruptcy enumerated in the act. So if she has transferred her interest in this property by way of security by permitting this judgment and lien, there is no allegation in the petition that it was done with intent to prefer Pardo & Hogan over her other creditors. Hence the second act of bankruptcy is not alleged. There can be no pretense that either the fourth or fifth act of bankruptcy is alleged.

The third act of bankruptcy reads:

"Having suffered or permitted, while insolvent, any creditor to obtain a preference through legal proceedings, and not having at least five days before a sale or final disposition of any property affected by such preference vacated or discharged such preference."

This act of bankruptcy is not committed by suffering or permitting, while insolvent, a creditor to obtain a preference through legal proceedings merely. The act of bankruptcy is not committed until the person suffering or permitting the obtaining of the preference by legal proceedings, suit, and judgment has failed "at least five days before a sale or final disposition of any property affected by such preference to vacate or discharge such preference." It has been held that this act of bankruptcy is not committed until a sale is at least advertised or the property affected by the preference is to be finally disposed of and the fifth day prior to the proposed sale or proposed final disposition of the property affected has arrived. In the case of personal property, a sale or proposed sale on execution issued on a judgment is, of course, the sale or final disposition intended, as there is no right of redemption. In the case of real estate, an advertised sale on execution or an actual sale would, in my judgment, be a final disposition, notwithstanding there is a right of redemption. In the case of real property, under the law of the state of New York the docketed judgment becomes an absolute lien so soon as docketed in the county where the real property is situated and is "a disposition of the property," in a sense, for it has been by operation of law pledged as a security for the debt or amount of the judgment; but under the terms of the bankruptcy act such a lien, such a disposition of the real property, does not become final until the expiration of four months from its docketing in the county where the real property is situated. In this case, under the provisions of the bankruptcy act, the real property affected by the preference, judgment suffered and permitted, would not have passed absolutely under the lien of this judgment, and so have been finally disposed of as security for the debt until March 8, 1908. On the 7th of March, 1908, the petition was filed. This real property affected by this judgment, this preference—for it was such and made so by section 60a of the act—was to be effectually and finally disposed of so far as the alleged bankrupt was concerned,

163 F.—49

aside from the right to redeem from the lien by payment thereof, on the 8th day of March, 1908, by operation of law. An execution and levy and an advertised sale thereunder were wholly unnecessary to a final disposition of this property. On the 8th day of March, 1908, but for the filing of the petition in bankruptcy, the real property would have passed irrevocably and absolutely under the lien, and, as Tupper had become and was insolvent, it was not in her power to pay or discharge it. As to the effect of this, see Scheuer v. Smith, etc., 112 Fed. 407, 50 C. C. A. 312.

Not so with personal property, for there there is no lien until execution is issued and generally levy made, and, even then, the lien ceases if within definite periods a sale is not advertised, and hence there is no final disposition of such property proposed until the same is advertised for sale.

It seems to me that effect is to be given to the words "or final disposition of any property affected by such preference." "Final disposition" is not a gift of the property to some third person or a voluntary transfer to the creditor in satisfaction of the preferential judgment, as that would be merely a sale in payment. Congress had in mind, when it enacted this law, the fact that there are different ways or modes of disposing of property, of enforcing executions, judgments, and liens, and it referred to the ordinary method of disposition by way of sale, and then used the words "or final disposition" to cover every other method of passing the control and dominion of the property from the debtor, insolvent person, to another or to others either absolutely or as security to the preferred creditor to the exclusion of his other creditors. The purpose of the law is that no one creditor shall be preferred over the others by an insolvent person, but that all creditors shall share equally except as to honest liens created more than four months prior to the filing of a petition in bankruptcy. It was not intended that a creditor should obtain a lien on all the real estate of an insolvent person by a judgment filed and docketed, and then lie still, without issuing execution or making a levy and advertising the property for sale for four months and until such judgment had become unimpeachable under the bankruptcy act or otherwise, thereby gaining a preference, an absolute security for the debt, and it might be to the extent of the entire property of the insolvent person, and thus excluding other creditors from any share in the estate. It has been held that an advertised or even a proposed sale is not in all cases necessary under subdivision 3 of section 3. In re Harper (D. C.) 105 Fed. 900, 5 Am. Bankr. Rep. 567; In re Miller et. al. (D. C.) 5 Am. Bankr. Rep. 140, 104 Fed. 764; Scheuer v. Smith & Montgomery Book etc., Co., 7 Am. Bankr. Rep. 384, 112 Fed. 407, 50 C. C. A. 312.

In Re Miller et al., supra, judgment was obtained and execution issued. The personal property of the judgment debtor was then subject to a lien and bound by the judgment. Code Civ. Proc. N. Y. §§ 1405, 1410. The insolvent person, alleged bankrupt, on being questioned as to his property, informed the sheriff that a third person had money belonging to him, and a part of that money was paid over by such person to apply on the judgment and was so applied. No levy was made and no sale was advertised. A part of the property of the

insolvent passed to the judgment creditor however. It was a final disposition of property affected by the preference. Here the real property of Tupper, but for the filing of the petition in bankruptcy, would have passed absolutely under the lien of the judgment the next day, March 8, 1908. It would have been finally disposed of so far as the petitioner and other creditors of Tupper were concerned. Nothing but an adjudication in bankruptcy will save it from that lien and a disposition thereof thereunder for the sole benefit of Pardo & Hogan. In the eye of the law of the state of New York, it is the property of Pardo & Hogan for the satisfaction of and to the extent of their debt.

In Re Harper, supra, judgment was entered and execution issued, but no levy was made or sale advertised. Garnishment proceedings were commenced to reach property in the hands of a third person belonging to the alleged bankrupt. The garnishee filed an answer admitting $3,255.78 due Harper. Under the practice in Illinois, the garnishee could turn over to the judgment creditor so much of this amount as might be necessary to pay the judgment. Held, that an act of bankruptcy had been committed under subdivision 3 of section 3. The money had not been turned over, but such proceedings had been had that an absolute lien thereon had been created. But for the filing of a petition in bankruptcy, the money in the hands of the garnishee would have gone in satisfaction of the judgment provided the judgment debtor did not pay it. It is this case in principle. Here, but for the bankruptcy proceedings, the land or its proceeds will go to the judgment creditor if the judgment debtor does not pay it. But he is insolvent, as the petition alleges and the demurrer concedes, and cannot discharge the lien without applying his other property, if any, to the payment of this preference, or borrowing the money. It was possible and easy for Tupper to vacate or discharge the preference obtained by the docketing of this judgment. All she had to do, being insolvent, was to file a voluntary petition in bankruptcy and the judgment would fall under sections 67c and 67f and 60b. The material parts read:

"(c) A lien created by or obtained in or pursuant to any suit or proceeding at law or in equity, including an attachment upon mesne process or a judgment by confession, which was begun against a person within four months before the filing of a petition in bankruptcy by or against such person shall be dissolved by the adjudication of such person to be a bankrupt if (1) it appears that said lien was obtained and permitted while the defendant was insolvent and that its existence and enforcement will work a preference, or (2) the party or parties to be benefited thereby had reasonable cause to believe the defendant was insolvent and in contemplation of bankruptcy, or (3) that such lien was sought and permitted in fraud of the provisions of this act. * * *"

"(f) That all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt, unless the court shall, on due notice, order that the right under such levy, judgment, attachment, or other lien shall be preserved for the benefit of the estate; and thereupon the same may

pass to and shall be preserved by the trustee for the benefit of the estate as aforesaid."

Section 60b:

"If a bankrupt shall have given a preference, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person. And, for the purpose of such recovery, any court of bankruptcy, as hereinbefore defined, and any state court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction."

See Wilson v. Nelson, 183 U. S. 196, 197, 22 Sup. Ct. 74, 46 L. Ed. 147.

This she did not do and has not done. She has by such nonaction assented to the judgment and preference. The fair inference is that she assents to the lien and desires to aid and take part in preferring these creditors oven her other creditors. It may be a fair inference that she has "transferred" while insolvent by way of security, in one of the modes referred to in subdivision 25 of section 1, this real property to these judgment creditors with intent to prefer such creditors over her other creditors. May not her intent to prefer by this mode of transfer and the intent of Pardo & Hogan to obtain and receive and retain a preference be fairly inferred? It is not necessary, under subdivision 3 of section 3, that Tupper should have done affirmative acts, and, even under subdivision 2, mere silent acquiescence and failure to act while the property is being transferred by legal proceedings may be sufficient. I have not deemed it necessary to refer to the numerous cases where a sale of personal property was involved, and where it was held that, usually, an execution, levy, and advertised sale is essential. Those cases do not govern this.

While I am of the opinion that an act of bankruptcy is charged in this petition, the petitioner, if so advised, may file an amended petition, nunc pro tunc, setting up these acts and charging the first, second, and third acts of bankruptcy so as to cover the entire case in all its phases.

The demurrer is overruled, with the privilege of amending, as suggested.