### In re ADAMS & HOYT CO.

(District Court, N. D. Georgia. October 21, 1908.)

No. 2,235.

BANKRUPTCY (§ 71*) — CORPORATIONS — EFFECT OF PROCEEDINGS FOR DISSOLUTION.

> Where a corporation, being insolvent, commits acts of bankruptcy by preferring certain creditors, the jurisdiction of a court of bankruptcy to adjudicate it a bankrupt and administer its estate under the provisions of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]) attaches, and the corporation cannot avoid such jurisdiction and validate its preferences by instituting proceedings for dissolution in a state court before bankruptcy proceedings against it are instituted.

> [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 71.*]

In Bankruptcy. On petition in involuntary bankruptcy.

Moore & Pomeroy, for petitioning creditors.

Candler, Thompson & Hirsch and Slaton & Phillips, for objecting creditors.

NEWMAN, District Judge. On August 5, 1908, the stockholders of the Adams & Hoyt Company filed a petition in the superior court of Fulton county, setting out that it was a corporation of Fulton

county, Ga., authorized by its charter to do a general jobbing business in soda water apparatus, supplies, and the dispensing of soda—the petition further setting out the indebtedness of the corporation, and the statement of its assets, the latter being somewhat in excess of the former; that the capital of the company was inadequate to meet the demands of its business; that on the previous day, August 4th, there had been a meeting of its stockholders at which the outstanding capital stock thereof was represented, and a resolution was unanimously passed that the charter and franchises of the company be surrendered and further conduct of the business be abandoned; that the superior court be petitioned to take charge of the assets and administer them for the benefit of the creditors and stockholders; that, unless a court of equity should intervene, great loss would result to the stockholders and creditors, and it was necessary, therefore, that a receiver be appointed to liquidate the business under the direction of the court; that the company was not insolvent, but the assets of the company were in excess of the liabilities, and under proper management the company should be able to pay all creditors, and leave something for the stockholders. The petitioners then pray, first, that the court accept the surrender of the charter and franchises; second, that a receiver be appointed to take charge of all the assets of the company, and sell same at the best possible prices under the order of the court, and collect all indebtedness; third, that all the creditors be allowed to intervene, and that all persons be enjoined from interfering in any way with the assets or property in the hands of the receiver upon instituting suits on their claims or proceeding with suits already instituted.

Service was acknowledged on petition by the vice president and treasurer of the company. The judge of the superior court, upon presentation of the petition, passed an order, the material part of which is as follows:

"It appearing to the court that the said defendant corporation has been dissolved by the surrender of its charter, which surrender is hereby accepted by the court, and upon such surrender and dissolution all of its property and assets become a fund, first, for the payment of its debts, and then for equal distribution among its stockholders, and to this end this court has power to appoint a receiver under proper restrictions to property administer said assets under its direction, all as provided in the Code of this state, and the defendant company consenting thereto, it is therefore considered, ordered, and adjudged that A. Cruickshank be and he is hereby appointed receiver of all the property and assets of every description belonging to the Adams & Hoyt Company," etc.

This proceeding was instituted under sections 1884 and 1886 of the Code of Georgia of 1895. Later on the same day, August 5, 1908, certain creditors filed a petition in bankruptcy against the Adams & Hoyt Company in this court. Insolvency prior to the time of filing the petition in the state court was alleged, and certain acts of bankruptcy set out; several of them being payments to creditors within four months with the purpose, intent, and effect of preferring such creditors to whom payments were made over other creditors of the same class. Another act of bankruptcy alleged was that the Adams & Hoyt Company, while insolvent, and because of insolvency, au-

thorized, directed, and procured a petition to be filed in the superior court asking for the appointment of a receiver, and upon which a receiver was duly appointed by the judge of the superior court. The various grounds of bankruptcy were contained in the original petition, and an amendment subsequently filed.

Certain creditors came into the case by counsel and denied the jurisdiction of the court on the ground that the company had surrendered its charter and ceased to be a corporation by the proceedings in the superior court of Fulton county referred to above. The issue thus made was referred by the court to a special master, who has filed his report. This report, which goes thoroughly into the questions involved, is as follows:

"Petition for receiver having been filed in the state court on the 5th day of August, 1908, and one Cruickshank having been appointed receiver by the judge of the superior court, certain creditors on the 5th day of August, 1908, filed an involuntary petition in bankruptcy in the United States District Court; said petition alleging that the said Adams & Hoyt Company had committed acts of bankruptcy in making preferred payments while insolvent, and also having transferred and assigned to one Charles A. Bowen, for the purposes of hindering creditors of the company, in the sum of $7,000. Subpœna was issued by the clerk, returnable the 15th day of August, and on that day a plea to the jurisdiction was filed by certain creditors of the Adams & Hoyt Company; the said pleadings stating that on the 5th day of August a bill had been filed in the superior court of Fulton county, and one Cruickshank had been appointed receiver of all the assets of the Adams & Hoyt Company, and an order had been duly passed, ordering and adjudging that the Adams & Hoyt Company should be dissolved, and that the charter was accepted by the Fulton superior court, and that by virtue of said order said corporation was now dissolved. Petitioners dispute that the Adams & Hoyt Company should be declared bankrupt for the reason that the Adams & Hoyt Company is not a corporation, and was not at the time of the filing of the petition in bankruptcy, and therefore comes not within the class of corporations which can be adjudicated bankrupts. In the answer filed on the same day petitioners deny that the Adams & Hoyt Company had within four months next preceding the date of filing of the petition, and while insolvent, committed an act of bankruptcy. Petitioners further deny that the Adams & Hoyt Company are insolvent. Under an order passed by the judge of the District Court on August 21, 1908, all the questions of fact and law involved in the above pleadings are referred to me as special master, to report my findings to the court at as early a date as possible.

"On the 2d day of September, 1908, at the first hearing of these proceedings, an amendment was filed by the petitioners in bankruptcy; said amendment alleging a transfer to the Fourth National Bank, one of the creditors of the Adams & Hoyt Company, on the 7th day of July, 1908, with intent to prefer, etc. The amendment further charges that the Adams & Hoyt Company had authorized, directed, and procured the petition to be filed in the superior court of Fulton county, asking the appointment of a receiver; that under the petition the receiver was appointed by the judge of the superior court; that the Adams & Hoyt Company had, on the 21st day of July, 1908, paid to the West India Manufacturing Company $58, with intent to prefer said creditor, etc.

"I find from the evidence the following facts: That the Adams & Hoyt Company committed the following acts of bankruptcy: (a) In paying $800 of its property to the Fourth National Bank of Atlanta, one of its creditors, on July 7, 1908; it being then insolvent. (b) In paying to J. N. Hirsch, one of its creditors, $300 of its property during the month of July, 1908, and thereby preferring him over its other creditors; it being then insolvent. (c) By paying to A. C. Woolley & Co., one of its creditors, $56 during the month of July, 1908, and thereby preferring said Woolley & Co. over its other creditors; it being then insolvent. (d) That it committed an act of bankruptcy in trans-

ferring and conveying to C. A. Bowen on July 31, 1908, who was one of its creditors, also its treasurer and general manager, a large portion of its property, consisting of soda water founts and stands on Decatur street and on Butler street in the city of Atlanta, and that said transfer and sale enabled said Bowen to obtain a preference, and did thereby prefer him over its other creditors; it being then insolvent. (e) Said company committed a further act of bankruptcy, in that it did, while insolvent, on or about the 5th day of August, 1908, by act of its stockholders, authorize and request the appointment of a receiver of its assets by the judge of the superior court of Fulton county, Ga. (f) That it further committed an act of bankruptcy, in that it did, on or about the 22d day of July, 1908, while insolvent, transfer to the West India Manufacturing Company, one of its creditors, $58 of its property, with intent to prefer this creditor over its other creditors.

"I find the law applicable to the case to be as follows: (1) That, in order to dissolve a corporation in the method attempted by the Adams & Hoyt Company, it must surrender its charter to the state of Georgia, and the surrender must be accepted by the Legislature before the corporation can be dead. This was not done in this case. (2) That, even though the company did surrender its charter and became extinct for all practical purposes, the bankrupt court will consider that the corporation still has sufficient life to enable it to administer the estate under the provisions of the bankrupt act.

"Section 1884 of the Code of Georgia of 1895 provides: 'A corporation may be dissolved by a voluntary surrender of its franchises to the state.' And section 1886 provides: 'Upon the dissolution of a corporation for any cause, all the property and assets of every description belonging to the corporation shall contribute a fund, first for the payment of its debts, and then for equal distribution among its members; to this end the superior court of the county, in which said corporation was located, shall have power to appoint a receiver, under proper restrictions, properly to administer such assets under its direction.' The first above-quoted section is a mere codification of the common law, and did not in any wise change the law existing prior to the adoption of the Code. The charter of the Adams & Hoyt Company was never surrendered to the Legislature, nor accepted by it. It is true a resolution was passed by the stockholders, resolving that a surrender be made, and an effort made to have the superior court of Fulton county accept the surrender. The dissolution is not complete until the surrender is accepted, and the acceptance must be by the Legislature.

"It is said in the case of Mechanics' Bank v. Heard, 37 Ga. 401: 'It is contended that a corporation may by "a voluntary surrender of its franchises dissolve itself at its will; that to the resolutions of the corporators surrendering the franchises no subsequent legislative assent is necessary; that in effect an acceptance of such surrender has been given in advance." This is certainly startling. Called upon for the first time to interpret the several clauses of the Code touching the dissolution of a corporation, we have felt bound by a high sense of duty to consider carefully the position assumed, and to weigh well the consequences, which, if we were to accede to it, it would induce upon the interests and business of the state. Our proven and undoubted conviction is that it is unsupportable by law and on principle untenable. * * * Our Code, in enumerating the grounds whereby corporations are dissolved, but repeats those existing at common law. Surrender is one of them. A surrender is not a dissolution. It is but a mode, a way, a means to an end. The corporators consent to surrender their franchise, tender it back to the Legislature, and ask to be dissolved as a corporation. This is their free act, and proceeds from one party to the contract. If the surrender is formal, under the seal of the corporation, and the Legislature, the other party to the contract, in behalf of the state, accepts it by an act of ordinance in some authoritative form, and that is authenticated, as laws and ordinances usually are, then, and not till then, is the dissolution of a corporation complete. Our Code, whilst it but repeated the grounds whereby dissolution of corporations is perfected at common law, has omitted to prescribe any forms to be pursued. This is not surprising, as, in condensing the leading principles of the common law, the codifiers were compelled to exclude leading titles, necessarily inferential, without specification. Adopting the ground of dissolution at

common law, the Code would have but contemplated that those grounds should be executed in the forms of the common law as the identity of surrender at common law as a mode of dissolution of a corporation. With the surrender defined by the Code, it cannot but be conceded by every lawyer who will take the trouble of investigating the subject that no mode or form is prescribed by the Code as necessary to be pursued in order to make it effectual. There seems to me no escape from the necessity of alleging an insupport of such allegation accepting some act of ordinance of the Legislature, approved by the Governor, assenting to or accepting the proposed surrender of their franchise.'

"No power is given to the superior court to accept a voluntary surrender of a franchise and charter of a corporation. The act of granting a charter by the court is legislative, and not judicial. The superior court may give life to a corporation, but it has no authority to assent to its committing suicide. It is said in Gibson v. Thornton, 107 Ga. 562, 33 S. E. 896: 'In the absence of express statutory authority, a court of equity has no power to dissolve a corporation and appoint a receiver to administer its assets.' The case of Branch Sons & Company v. Knapp, 61 Ga. 615, is a case where the corporation had surrendered its charter and the surrender accepted by the Legislature. It is said in 10 Cyc. p. 1199, citing principal Georgia cases: 'The dissolution of a corporation may be effected by the concurrent act of the state and the corporation; the corporation surrendering, and the state accepting the surrender of, its franchises, without the intervention of any judicial proceedings for that purpose. The doctrine is frequently announced in judicial proceedings that a corporation cannot dissolve itself by a mere corporate act, or by vote of a majority of the members, so as to escape its responsibilities or liabilities, but that a surrender of its franchises by a corporation must, in order to be effective, be followed by an acceptance on the part of the state.' The Code itself requires a surrender to be made 'to the state,' thereby excluding the idea that a surrender can be made by surrendering to a court.

"From the foregoing, it is obvious that the Adams & Hoyt Company has never legally surrendered its franchises, and accomplished a dissolution in the manner as provided and contemplated by the Code of Georgia. As to whether this provision of the state law is superseded by the act of Congress known as the 'Bankrupt Act,' and whether the federal courts will still consider the entity of the corporation as sufficient to give jurisdiction to adjudge it bankrupt, the true rule stated in section 97 of Remington on Bankruptcy is as follows: 'A corporation, ceasing to do business after the commission of an act of bankruptcy, does not defeat bankruptcy, as not being principally engaged in any business. Logically the dissolution of a corporation, after its commission of an act of bankruptcy, and before the filing of a petition, would defeat the jurisdiction of the bankruptcy court. Being no longer a corporation, it could not be a bankrupt corporation. However, where such dissolution is a mere incident to the winding up of the corporate affairs and the collection and distribution of its assets, such dissolution will not defeat the jurisdiction; the fiction of corporate entity giving way to the reality of business needs.' It is said in 1 Current Law, p. 736: 'Notwithstanding a decree in a state court, declaring a corporation dissolved and appointing receivers, a federal court may have jurisdiction of a creditors' petition to have the corporation adjudged a bankrupt.'

"A well-considered case is that of Scheuer v. Book, etc., Co., 7 Am. Bankr. Rep. 390, 112 Fed. 407, 50 C. C. A. 312, Circuit Court of Appeals, Fifth Circuit, opinion by Judge Pardee. It is said: 'Where a corporation, while insolvent, has suffered and permitted some of its creditors to obtain preferences through legal proceedings, and then its stockholders and officers sue for and obtain a dissolution for the express purpose of hindering and delaying creditors, and the effect of the proceeding is to permit the alleged preferences to stand in full force, and to actually hinder and delay other creditors, it has committed an act of bankruptcy within the meaning of section 3a (Act July 1, 1898, c. 541, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422]), which warrants and requires its adjudication as an involuntary bankrupt.' In this case the company was adjudged a bankrupt, notwithstanding it had been dissolved in the proper method, as authorized by the laws of Alabama. In Re Storck

Lumber Company (D. C.) 8 Am. Bankr. Rep. 86, 114 Fed. 360, the correct principle is stated in the following language: 'Upon the broad principle that the national bankrupt law is to govern the administration of the estate of all insolvent debtors, and supersedes all the state laws having the like object, when its provisions are invoked by the requisite creditors and acts of bankruptcy are proven, a motion made by the receiver of a corporation, appointed under a suit for winding up insolvent corporations, which is in the nature of a proceeding in insolvency, to quash the petition in involuntary bankruptcy theretofore filed against the corporation, upon the ground that the state court had full jurisdiction when it entered its decree dissolving the corporation, and that, when said petition was filed, the corporation was no longer in existence, must be overruled.' In this case the corporation had been dissolved, and a receiver appointed in the state court. Subsequently thereto an involuntary petition was filed, and adjudication followed.

"In the case of Tiffany v. Condensed Milk (D. C.) 15 Am. Bankr. Rep. 417, 141 Fed. 444, it is said: 'As to such debts an individual does not lose his proven character by ceasing to carry on the business in which they were contracted and turning to another in which he is not liable to bankruptcy, and neither does a corporation by stopping business altogether and going into liquidation, voluntarily or involuntarily. In either case, as to debts previously contracted, the business character of such person, in contemplation of the law, remains the same.' In the case of International Coal Mining Company (D. C.) 16 Am. Bankr. Rep. 312, 143 Fed. 665, it is said: 'The title to this exhibited real estate must remain in the corporation until sold, and a dissolution cannot take place so long as this asset exists, even under that act; and, even if this were not so, the bankrupt law would so far control the matter of the dissolution of the insolvent corporation as to prevent its legal extinction by superseding all state laws in conflict with its provisions as to an extent necessary to enable creditors of insolvent corporations to have the assets of their insolvent debtor administered in accordance with its terms.' In the case of Cole & Company v. Stauffer, 17 Am. Bankr. Rep. 577, 148 Fed. 981, 78 C. C. A. 609, it is said: 'It is, however, strenuously insisted that this act of the board of directors was a nullity, for the reason alleged, that at the time it was made the corporation had ceased to exist, and therefore that the directors and all other officers were functi officiis. It is true that the law already referred to provides that the property of the corporation sold under the special fi. fa. should pass to the purchaser, thus, in effect, terminating the old corporation. If, however, the proceeding by which this property and franchises was sold was an act of bankruptcy, it was void and of no effect. If it were not, still the existence of the corporation is not terminated in every respect by this requirement of the state act. It has often been held that, even where a charter expires by time, its existence will be considered as being extended for the purpose of winding up its affairs, securing creditors, and satisfying the ends of justice, even without special statutory authority for that purpose, and we think that the paramount authority of the federal bankrupt law is sufficient to keep alive the corporation in this case for the purpose of the bankrupt jurisdiction created by the said act, and to give efficacy to the admission made by the directors of the insolvent corporation as an act of bankruptcy.'

"It is said in Re Underwear Company (D. C.) 18 Am. Bankr. Rep. 623, 153 Fed. 224: 'It seems to me that upon this record alone it must be apparent to any reasonable mind that the facts found by that court show that it was because of insolvency that the receiver was appointed.' Holding that the appointment of a receiver in such a case amounted to an act of bankruptcy, and that, notwithstanding a dissolution of the corporation, the federal court had authority to adjudge the company a bankrupt, it adjudicated it in that case. In re Munger Vehicle Tire Company, 19 Am. Bankr. Rep. 785, 159 Fed. 901 (Circuit Court of Appeals, Second Circuit), is a case where the Governor of New Jersey had declared the charter of the company forfeited, and subsequently thereto a petition in bankruptcy was filed, and the court holds that such a dissolution of the corporation does not prevent its adjudication.

"These conclusions being sound, I am constrained to hold that adjudication should be had, and an order may be taken accordingly."

Exceptions to the above report were filed, and the questions made by the answers and these exceptions have been argued and submitted.

It is not questioned here, if evidence can be heard outside of what appears in the record of the superior court, that the Adams & Hoyt Company was insolvent for some months prior to the time the petition was filed in the superior court. It is ,not questioned that the acts of bankruptcy were committed, as found by the special master. It is earnestly contended, however, that the law under which these proceedings in the superior court were instituted was not an insolvency law, which was superseded by the bankruptcy act. It is contended, also, that corporations such as the Adams & Hoyt Company, created by the Superior Court under the law of the state, may surrender their charters and terminate their existence by filing a petition such as filed in this instance in the superior court, although it is conceded that corporations created by the Legislature can only terminate their existence, prior to the time their charters expire by limitation, by surrendering the same to the Legislature and obtaining an act accepting the surrender of the charter. Be all this as it may, I can express my opinion on the issues here in a very few words.

Assuming that the Adams & Hoyt Company, while insolvent, within four months prior to the filing of the petition in bankruptcy, committed certain acts of bankruptcy, I do not believe that it could escape and avoid the jurisdiction of the bankruptcy court by instituting a proceeding such as was instituted by this company in the superior court. The jurisdiction of the bankruptcy court attached, or its right to act arose, when the company, being insolvent, committed the acts of bankruptcy. Any other view of the matter would destroy the effect of the bankruptcy act entirely. It is the paramount law for the administration of estates of insolvents. Its provisions, which seek to bring about equality among creditors of the same class, cannot be avoided in this way. The effect of proceedings such as were instituted by this corporation in the superior court, if sustained, would be that an insolvent corporation could, in clear and gross violation of the bankruptcy act, transfer all of its property to one or more of its creditors, to the exclusion of all of its other creditors, and the corporation would thereby create a preference or preferences which would undoubtedly be set aside under the bankruptcy act, but the corporation would avoid the operation and effect of the bankruptcy act by this new method of procedure. The right of the bankruptcy court to take charge of the corporation's effects and to administer the same in accordance with the bankruptcy act, thereby bringing about equality of payment among creditors of the class, arose and was in existence at the time the petition in the same court was filed. It still exists unaffected, in my judgment, by what was done in the superior court.

I do not discuss this case, except in its general aspect. It is sufficiently dealt with in detail by the special master in his report. The view here taken is sustained, I think, by the authorities cited by the special master, under the bankruptcy act of 1898. See, also, Remington on Bankruptcy, § 97. It is certainly sustained by authorities under Act. March 2, 1867, c. 176, 14 Stat. 517. In re Independent In-

surance Company, Fed. Cas. No. 7,018, approved in the Circuit Court, Fed. Cas. No. 7,017, and In re Mercantile Insurance Company, Fed. Cas. No. 9,431.

The exceptions to the special master's report will be overruled, and an order entered adjudging the Adams & Hoyt Company bankrupt.