### CAREY v. MAYER.

#### (Circuit Court of Appeals, Second Circuit. April 8, 1897.)

CORPORATIONS—INSOLVENCY—CALLS ON STOCK—DISCHARGE IN BANKRUPTCY.

The obligation of a subscriber to the stock of a corporation to respond to calls becomes, upon the declared insolvency of the corporation, by the execution of a deed of trust for the benefit of creditors, a liability with a contingency, though not fixed in amount, and not payable until a call has been made; and when such subscriber has, subsequent to the execution of such a deed of trust, filed his petition in bankruptcy under the act of 1867, and been discharged, his discharge is a good defense to an action to recover the amount of his subscription, though the call on which the action is based is not made until after the discharge is granted.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Burton N. Harrison, for plaintiff.

George Zabriskie, for defendant.

Before PECKHAM, Circuit Justice, and WALLACE and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. Alexander J. Mayer, of the city of New York, became, prior to 1866, the holder and owner of 450 shares, of the par value of $100 each, of the capital stock of the National Express & Transportation Company, a Virginia corporation. The statute of Virginia required that, upon every subscription for shares in a corporation of the character of the express company, there should be paid $2 upon each share at the time of subscribing, and that the residue thereof should be paid as required by the president and directors. When Mayer became a stockholder, $20 per share had been paid upon his stock. On September 20, 1866, the corporation assigned and transferred by deed all its property to three trustees, for the benefit of its creditors. By this assignment, that part of the assets of the corporation which consisted in unpaid subscriptions for stock passed to the trustees, but the collection of this class of the assets by actions at law could be set in motion only by a call made by the president and directors, or, failing their action, by a court of equity, at the instance of the trustees or of the creditors. Nothing was done in this respect either by the trustees or by the officers of the corporation, and on November 28, 1871, a creditors' suit, by bill in equity, was commenced in a Virginia court of competent jurisdiction, one object

of which was to compel a call for so much of the unpaid subscriptions as would suffice to pay the debts of the company. The court, on December 10, 1880, made a decree, which found the amount due to the persons named as creditors, and made a call upon the stockholders to pay 30 per cent. of the par of their stock in order to administer the trust and pay the debts. Subsequently, on March 26, 1886, a further call for 50 per cent. was made by the Virginia court. On March 29, 1868, Mayer applied to the district court for the Southern district of New York to be declared a bankrupt, was thereafter adjudged a bankrupt, and, on May 20, 1879, was discharged by said court from all debts and claims which were provable against his estate and which existed on March 29, 1868. No claim for any liability upon said stock was proved against his estate, and no portion of either of said calls has ever been paid. Upon an action at law before the circuit court for the Southern district of New York, by George G. Carey, the successor of the Virginia trustees, against Mayer, to recover the amount of the two calls, to which action the discharge in bankruptcy was pleaded in bar, the court directed a verdict for the defendant. The only question upon the writ of error is whether the discharge granted May 20, 1879, upon a petition in bankruptcy filed March 29, 1868, discharged the defendant from liability upon the two calls made in 1880 and in 1886, and that question depends upon whether the liability was or was not a provable debt.

The provisions of the bankruptcy statutes which relate to this question are contained in sections 5067 and 5068 of the Revised Statutes, and are as follows:

"Sec. 5067. All debts due and payable from the bankrupt at the time of commencement of proceedings in bankruptcy, and all debts then existing, but not payable until a future day, * * * may be proved against the estate of the bankrupt. [The remainder of the section relates to demands for damages arising out of specified torts.]

"Sec. 5068. In all cases of contingent debts and contingent liabilities contracted by the bankrupt, and not herein otherwise provided for, the creditor may make claim therefor, and may have his claim allowed, with the right to share in the dividends, if the contingency happens before the order for the final dividend, or he may, at any time, apply to the court to have the present value of the debt or liability ascertained and liquidated, which shall then be done in such manner as the courts shall order, and he shall be allowed to prove for the amount so ascertained."

When the question has arisen as to the date at which the statute of limitations began to run against a liability to pay calls of the kind now under consideration, the supreme court has repeatedly insisted that the statute did not begin to run until the debt was ascertained; that this ascertainment was had when a call or authorized demand for payment in behalf of creditors had been made; and that no obligation rested upon "the stockholder to pay at all until some authorized demand on behalf of creditors was made for payment." Scovill v. Thayer, 105 U. S. 143; Glenn v. Liggett, 135 U. S. 542, 10 Sup. Ct. 867; Glenn v. Marbury, 145 U. S. 499, 12 Sup. Ct. 914. But we are not now called upon to determine when the obligation became a fixed debt, but to ascertain its character after the insolvency of the corporation, and before

an assessment. It is obvious that before the exact amount of a liability has become certain, or has been ascertained, it may be a debt for the purpose of attachment, or a debt which can be presented as a claim against the estate of a deceased person, the amount of the claim to be subsequently ascertained. In the case of a liability for an unpaid subscription for stock, the seed of the liability is the act of subscription, and when notorious insolvency takes place, and it becomes manifest by the act of the corporation that the subscriptions must pay the debts, the liability has also become manifest, but it requires a call or assessment to make it complete and of certain amount. It is a liability which cannot be made the subject of an action at law against the subscriber until a call has been made, but it is a liability not yet matured. Thus, Mr. Justice Bradley has said, in Re Glen Iron Works, 20 Fed. 674, that "the obligation to pay is founded—First, upon the subscription to the stock; secondly, upon the existence of creditors and debts of the corporation requiring the payment of the subscription to satisfy them." He further says that the condition to be performed "in order to convert the obligation of the stockholder into a perfect and complete debt" is an assessment and a call; that, if the corporation does not do its duty and make the call, a court of chancery can; and that its interposition "does not create the duty to pay; it only assesses the equitable amount to be paid by each." This, we think, is the true view to be taken of the nature of Mayer's obligation at the date of the trust deed. The execution and delivery of the deed proclaimed that the corporation was unable to pay its debts in money, and that for the benefit of its unpaid creditors its property should be turned into money by trustees specially appointed for that purpose. By the insolvency, the obligation to pay something became existing and manifest; but the amount to be paid was uncertain, and was to be made certain either by the officers of the corporation or by a court of chancery which could ascertain the proper and equal amount to be paid by each, for equality of assessment was important. Hawkins v. Glenn, 131 U. S. 319, 333, 9 Sup. Ct. 739.

The question still remains whether, until the amount had been ascertained, the liability was provable within the provisions of section 5068. The record in this case presents the naked question whether a stockholder's liability of this character, which had been assigned to trustees for the benefit of creditors in September, 1866, was provable by the trustees against the estate of the stockholder in bankruptcy from 1868 to 1879, no attempt having been made by the trustees to obtain a call from a proper court of chancery, and the president and directors of the corporation neglecting their duty in this regard. From other records in this court, in actions by the plaintiff or his predecessor against stockholders to recover assessments, and from the opinions of other courts in similar cases, it seems that the trustees were, upon the suit of Mayer (the present defendant), enjoined, in October, 1866, by an interlocutory order of one of the courts of the state of New York, against acting under the deed of trust in respect to the assets of the corporation,

upon the alleged ground of the invalidity of the deed; that this order was in force until 1882; that the stockholders interposed repeated hindrances against the collection of the amount due upon their unpaid subscriptions; and that the trustees did not think that this part of the assets had been assigned to them by the trust deed. It also seems that the trustees willingly yielded to this opposition upon the part of the stockholders; made and desired to make no attempt to enforce the stockholders' liability; that doubts existed until 1871 in the minds of creditors and their advisers as to the proper course of procedure; and that much litigation became necessary to settle the legal questions, which were presented in various forms. In this record the question is not incumbered by considerations in regard to an estoppel upon the defendant, or the inability of the trustees, by reason of the action of other courts, to obtain an assessment, or their lack of knowledge in regard to their title to the unpaid subscriptions. The case stands as if this class of assets came into the hands of trustees for the benefit of creditors of an insolvent corporation, who were presumably capable and willing to take, and were not hindered from taking, the requisite steps for their collection.

Section 5068 provided that the creditor could make claim for a contingent debt or contingent liability, and have his claim allowed, with the right to share in the dividends, if the contingency happened before the order for the final dividend. A contingent debt or liability is not provable when the time for its becoming a debt is uncertain and not ascertainable, or the amount is uncertain and not to be ascertained. Riggin v. Maguire, 15 Wall. 549; Wolf v. Stix, 99 U. S. 1. If we plant ourselves upon the precise language in Scovill v. Thayer, supra, and say that the stockholder was under no obligation to pay anything until the amount had been ascertained by an assessment or authorized call, it follows that the call must precede the claim, because, if the call made the debt, there was not, until such an assessment, even a contingent debt. But that language of the court must be interpreted in view of the subject under consideration, which was the relation of the statute of limitations to the debt.

It may well be assumed that, before an official act of the corporation which has proclaimed insolvency, there is no provable debt against the bankrupt estate of a stockholder. The contingency, in the case of a solvent and "going" corporation, is so remote that a claim could not with propriety be made; but when the fact of insolvency has been confessed, and an assignment for the benefit of its creditors has been made, nothing remains to be done, in order to make the liability a fixed debt, but to ascertain the amount of the assessment by the intervention either of the corporation or of a court of chancery. This intervention it was the duty of the trustees to obtain. They could not properly lie still, and permit these assets to disappear by the death or the insolvency of the stockholders; and we can now see that, if they had set proceedings in motion before a Virginia court in 1866, an assessment would have been made within a reasonable time. There

79 F.—59

was no practical difficulty, under the facts disclosed in the record, which should have prevented the trustees from presenting their claim against the bankrupt estate, and, if the assessment should be made by the court of chancery before the final dividend, of having the claim allowed in the amount which that court should have ascertained. The remaining method of proving the claim, which is pointed out in section 5068, viz. by the valuation of the liability by the court of bankruptcy, was not in this case practicable. The difficulties in the way of reaching a result which would be anything more than a surmise, not supported by the aid of facts, are manifest. The only parties before the court would have been the trustees and the bankrupt, who could inform the court of the amount of the admitted, but not of the actual, debts. The actual amount must be obtained by a presentation of claims to a court or its master. The amount of collectible subscriptions and the, amount of probable expenses would be unknown factors to a court of bankruptcy, as they proved to be to the court of chancery; but the latter court could retain, and did retain, the cause, so as to make an additional call, if necessary. In addition, no valuation by the court of bankruptcy would have the necessary requisite of equality among the stockholders.

The plaintiff relies strongly upon the English decisions in bankruptcy cases, which with great uniformity construe their bankruptcy statutes as not permitting the allowance of a claim for an unpaid subscription, unless the call preceded, or was concurrent with, the date of the bankruptcy. It is necessary to quote the important sections of the statutes in order to understand the precise point of the decisions. The fifty-sixth section of 6 Geo. IV. c. 16, is as follows:

"If any bankrupt shall, before the issuing of the commission, have contracted any debt payable upon a contingency which shall not have happened before the issuing of such commission, the person to whom such debt has been contracted may, if he think fit, apply to the commissioners to set a value upon .ach debt, and the commissioners are hereby required to ascertain the value thereof, and to admit such person to prove the amount so ascertained, and to receive dividends thereon, or, if such value shall not be so ascertained before the contingency shall have happened, then such person may, after such contingency shall have happened, prove in respect of such debt and receive dividend with the other creditors, not disturbing any former dividends."

The important decision upon this section, and the one upon which the subsequent cases all rely, is Railway Co. v. Burnside, 5 Exch. 129. The calls which were in question were made after the defendant became bankrupt. Baron Parke rested his decision upon the meaning of the word "debt," and was of opinion that, when the bankruptcy occurred, no certain debt had been contracted. He said:

"Is this, then, a debt payable on a contingency under the 56th section? The contract on which the shareholder's obligation is founded is not to pay a certain fixed sum upon a future contingency, but such sum or sums as may be required from himself and all the other shareholders from time to time, not exceeding a certain sum, and regulated by the wants of the company. At the time of the bankruptcy it was uncertain what the sum would be which the defendant would be called on to pay, and no certain debt was then contracted."

If section 5068 contained only the term "debt payable upon a contingency," Baron Parke's opinion would be of great weight; but it contains the more elastic term "liability," and the statute also implies that the liability may ripen into a debt during the settlement of the estate.

The next statute is section 75 of the "Companies Act" (chapter 89, 25 & 26 Vict.), which is as follows:

"The liability of any person to contribute to the assets of a company under this act in the event of the same being wound up shall be deemed to create a debt. accruing due from such person at the time when his liability commenced, but payable at the time or respective times when calls are made as hereinafter mentioned for enforcing such liability, and it shall be lawful, in the case of the bankruptcy of any contributory, to prove against his estate the estimated value of his liability to future calls, as well as calls already made."

The earlier claims of the section were apparently designed to define the liability of a contributor upon his subscription to be a debt payable when the call was made; but it has been held that the last clause of the section prevented the proving of the debt, unless the winding up had commenced by a call at or prior to the date of the bankruptcy. Financial Corp. v. Lawrence, L. R. 4 C. P. 731; Hastie's Case, L. R. 7 Eq. 3, 4 Ch. App. 274.

The decision of this case is placed upon the ground that the deed of the corporation of all its assets to trustees for the benefit of creditors, being a declaration by the corporation of its insolvency and also the commencement of the winding up, preceded the filing of the defendant's petition in bankruptcy, and that, by reason of these facts, the defendant's obligation as a stockholder became a liability with a contingency, viz. the ascertainment by a court of chancery of the amount to be paid; that this amount could have been made certain; and that it was the duty of the trustees to endeavor to make it certain before the order for a final dividend. The cases in this country, in addition to those heretofore cited, which bear upon one side or the other, to a greater or less degree, upon the provable character of the liability of the defendant, are Irons v. Bank, 17 Fed. 308; Glenn v. Abell, 39 Fed. 10; Railroad Co. v. Clarke, 29 Pa. St. 146; U. S. v. Rob Roy, Fed. Cas. No. 16,179; Haywood v. Shreeve, 44 N. J. Law, 101; Glenn v. Howard, 65 Md. 40, 3 Atl. 895; Sayre v. Glenn, 87 Ala. 631, 6 South. 45.

The judgment of the circuit court is affirmed, with costs.