[Civ. No. 547. First Appellate District.—March 10, 1909.]

E. V. BURKE, Respondent, v. E. R. MAZE, Appellant.

CORPORATIONS—INSOLVENT BANK—AMOUNT DUE FROM STOCKHOLDERS—TRUST FUND FOR CREDITORS.—When a banking corporation becomes insolvent, the amount due from its stockholders on their unpaid subscriptions to the stock is a trust fund for its creditors, is a part of its assets, and may be collected for its creditors. The liability on such subscriptions arises by virtue of the stockholders' contract of membership in the corporation, evidenced by their certificates of shares.

ID.—DUTY OF DIRECTORS OF INSOLVENT BANK.—It is the duty of the directors of the insolvent bank to collect its unpaid subscriptions, and to make a call for the amount before suing thereon.

ID.—PRESUMPTION OF DISCHARGE OF DUTY—FAILURE REMEDIABLE BY
CREDITORS.—It must be presumed that the directors of the in-
solvent bank intended to follow the law, and to perform the duty
to make a call for unpaid stock due to the corporation; but if such
duty is not done, the power of the court as a court of equity may
be invoked by the creditors, and means would be found to collect
the amount due from the stockholders to the corporation.

ID.—BANKRUPTCY OF STOCKHOLDER—UNPAID SUBSCRIPTION PROVABLE
BY DIRECTORS—DUTY.—When a stockholder in the insolvent bank
becomes a bankrupt, his liability, including the estimated amount of
future calls upon his unpaid stock, is provable by the directors in
the bankruptcy proceedings; and it is their duty to prove the
same, in order to avail themselves of any dividend declared from
his assets; but whether he has assets or not, or whether his liabil-
ity on the stock be proved or not, it being provable, no action will
lie thereon after the discharge of the bankrupt.

ID.—EFFECT OF BANKRUPT'S DISCHARGE—LIABILITY TO INSOLVENT
BANK ON STOCK EXTINGUISHED.—The discharge of the stockholder
in bankruptcy has the effect to discharge the stockholder in gen-
eral from all provable debts, including the provable liability on his
unpaid subscription to the stock of the insolvent bank, which is not
included in any of the exceptions stated in the discharge.

ID.—APPEAL—JURISDICTION OF DISTRICT COURT OF APPEAL—PETITION
FOR REHEARING IN SUPREME COURT—REVIEW LIMITED TO CASE
STATED.—When an appeal is taken to the district court of appeal
of which it has appellate jurisdiction under the amendment to
article VI of the constitution, a rehearing in the supreme court
after judgment in the district court of appeal is only granted when
error appears upon the face of the opinion, or when a doubtful and
important question is presented upon which the supreme court de-
sires to hear further argument; and it will not consider or review
facts appearing in the record outside of or contrary to the case
stated in the opinion, though urged in the petition for rehearing.
[By supreme court on petition for rehearing.]

ID.—APPEALS TO SUPREME COURT REFERRED TO DISTRICT COURTS OF AP-
PEAL—FACTS IN RECORD REVIEWABLE.—When appeals to the
supreme court are referred to the district courts of appeal for
decision, the supreme court, on a petition for rehearing after judg-
ment in a district court of appeal, will look into the record to see
whether anything deserving consideration has been overlooked in
deciding the cause, or whether any of the facts have been miscon-
ceived in material particulars. [By supreme court on petition for
rehearing.]

APPEAL from a judgment of the Superior Court of Santa
Clara County. John E. Richards, Judge.

The facts are stated in the opinion of the court.

William A. Coulter, for Appellant.

Will M. Beggs, and R. C. McComish, for Respondent.

COOPER, P. J.—This appeal is from a judgment in favor of plaintiff. The controversy arose out of the following facts: The Union Savings Bank of San Jose was incorporated about November, 1888. In 1893 the defendant had become the owner of fifty shares of the capital stock of said bank of the par value of $100 per share, for which he held certificates duly and regularly issued. In March, 1899, said bank was declared insolvent and placed in liquidation. At the time the bank was so declared insolvent defendant had paid only ninety per cent of his subscription for said fifty shares of stock, and was still liable on proper call for the remaining ten per cent of the par value of the stock owned by him. On June 5, 1900, after the bank had been placed in liquidation, the defendant filed his petition in the United States district court to be adjudicated a bankrupt. He was so adjudged to be a bankrupt, and by order of said court duly given and made discharged from all his liabilities which were provable against his estate in bankruptcy and which existed on the said fifth day of June, 1900. This order or decree of discharge is set forth in defendant's answer, and not denied, and the court found that such discharge was duly given and made as alleged, but "that the debt herein sued upon was not a provable debt at the time of said discharge." Said bank continued insolvent and in January, 1907, it was indebted to its creditors in the sum of over $100,000, and had no resources with which to pay its creditors except by calling in the balance of the unpaid subscriptions to its capital stock; and thereupon, through its board of directors, it duly issued an assessment or call for $10 per share upon such capital stock. Defendant, at the time of said call or assessment, appeared upon the books of said bank still to be the owner of said fifty shares of stock, and there is no claim made, or evidence in the record, to show that defendant's said shares of stock ever passed to the trustee in bankruptcy. In March, 1907, said bank, through its board of directors, by resolution

duly made, elected to proceed by action to recover the various sums which remained delinquent by reason of said call, and the amount of the call against defendant, $500, remained unpaid and delinquent. The bank afterward, and prior to the commencement of this action, sold and assigned its alleged right to collect the said assessment or call from this defendant to one Beggs, who in turn assigned and transferred it to plaintiff, who is now the holder and owner of whatever right or title the bank had to proceed by suit against this defendant.

The sole question thus presented for determination is as to whether or not the ten per cent still remaining unpaid on defendant's shares of stock, subject to call by the board of directors, was a debt provable against defendant in bankruptcy.

The amount due from the stockholders for the subscribed stock of the corporation is a trust fund for the creditors of the corporation, and such unpaid subscriptions to its stock are a part of its assets, and may be collected for its creditors. (*Vermont etc. Co.* v. *Declez etc. Co.*, 135 Cal. 579, [87 Am. St. Rep. 143, 67 Pac. 1057]; *Walters* v. *Merced Academy Assn.*, 126 Cal. 583, [59 Pac. 136]; *Visalia etc. R. R. Co.* v. *Hyde*, 110 Cal. 632, [52 Am. St. Rep. 136, 43 Pac. 10].) Such liability arises by virtue of the stockholders' contract of membership in the corporation, evidenced by the certificates of shares. (Morawetz on Private Corporations, 2d ed., sec. 128; *Union Sav. Bank* v. *Willard,* 4 Cal. App. 690, [88 Pac. 1098].) It therefore appears to be clear that the defendant was liable by reason of his contract for $10 per share, which amount it was the duty of the directors of the bank to call for and collect in order to pay the creditors the amounts due them.

A discharge in bankruptcy releases the bankrupt from all his provable debts (with certain exceptions, of which this is not one). (Bankruptcy Act, 1898, sec. 17, [30 Stats. at Large, 550; U. S. Comp. Stats. 1901, p. 3428].) The said act further provides (section 63): "Debts of the bankrupt may be proved and allowed against his estate which are (1) a fixed liability . . . as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition against him, whether then payable or not . . .

10 Cal. App.—14

(4) Founded upon an open account or upon a contract, express or implied.'' As the bank had become insolvent the directors or receiver, as the case may have been, could have proven the claim of the bank against the defendant. The court of bankruptcy could have heard proof, if necessary, as to the amount of the debts of the bank and the value of its assets. In other words, it could readily have determined as to whether or not it was necessary to collect the amount for which defendant was liable to the bank in order to pay the creditors. The bank was insolvent, and it is manifest that it was the duty of the directors to collect the unpaid subscriptions. The defendant was liable. His liability was founded upon his subscription or ownership of the certificates of stock, on which ten per cent yet remained unpaid, and upon the existence of creditors and debts of the bank requiring the payment of the subscription in order to satisfy them. It is true that before the obligation or liability of the defendant became fixed so as to permit the bringing of a suit against him there must have been a call for the amount; but we must presume that the corporation, even if insolvent, intended to follow the law and perform its duty. If it did not do so, the power of the court, as a court of equity, could have been invoked by the creditors, and means would have been found to collect the unpaid amount so due by defendant. It therefore logically follows that if defendant had assets, such assets went into the hands of the trustee in bankruptcy, and the directors of the bank could have proven the claim against the defendant, and received the dividend that might have been paid through the bankruptcy court. It makes no difference whether the bankrupt had assets subject to the claim of his creditors, as the principle is the same. The debt of the defendant existed; it was provable in the bankruptcy proceedings.

The following authorities sustain the views herein expressed: *Iron* v. *Manufacturers' National Bank,* 27 Fed. 591; *Carey* v. *Mayer,* 79 Fed. 926, [25 C. C. A. 239]; *Glenn* v. *Abel,* 39 Fed. 10; *In re Smith,* 146 Fed. 923.

Counsel for respondent call our attention to several cases which apparently hold to the contrary. Most of these cases arose where there was no question as to the insolvency of the corporation. But if any of them hold that in case the

corporation had become insolvent at the time of the filing of the petition in bankruptcy the claim for an unpaid subscription could not have been proven, we cannot follow them.

In Purdy's Beach on Private Corporations, volume 1, section 332, after discussing the rule contended for by plaintiff as to the bankruptcy of shareholders with unpaid subscriptions, the author says: "If, however, the company is in liquidation at the time of his bankruptcy, the estimated amount of future calls may be proved." See the authorities cited in note 15 to the above section.

It is not necessary to decide the question raised by plaintiff's attorneys that the bill of exceptions cannot be considered because not served as provided by section 650 of the Code of Civil Procedure. The facts as to the debts. insolvency of the bank, and defendant's ownership of the certificates of shares, are all alleged in the complaint, not denied by the answer, and found to be true. The court also finds the discharge in bankruptcy as alleged and set forth in the answer.

The judgment is reversed, and the court below directed to order judgment for defendant on the findings.

Hall, J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 29, 1909, and the following opinion was then rendered thereon:

THE COURT.—The petition for a rehearing of this cause in the supreme court, after judgment in the district court of appeal, is denied. It is a cause which, under the recent amendment to article VI of the constitution, went properly by direct appeal to the district court for the first district. In such cases a rehearing in this court is granted only when error appears upon the face of the opinion of the appellate court, or when a doubtful and important question is presented upon which we desire to hear further argument. In such cases the denial of a petition for a rehearing would or might establish a mischievous precedent, and for that reason alone we feel obliged to review the decision of a cause which is not within our jurisdiction by direct appeal. In causes

properly appealed to this court and referred by us to the district court for hearing and decision the rule as to rehearings is different; for if it is contended that the case stated in the opinion of the district court of appeal differs materially from the case as it appears in the record, we feel bound to look into the record to see whether anything deserving consideration has been overlooked in deciding the cause, or any of the facts misconceived in material particulars. If so we order a rehearing notwithstanding the opinion of the district court may be correct on its face, because the complaining party has a right to the opinion of this court upon the precise case shown by the record. The petition for a rehearing of this cause, like many similar petitions recently filed, indicates that this distinction is not generally understood by members of the bar; for counsel bases a long and ingenious argument, supported by numerous authorities, upon facts which he contends are disclosed by the record, but which are not shown by the opinion. For the reasons very fully stated in the case of the *People* v. *Davis,* 147 Cal. 346, [81 Pac. 718], we cannot enter upon the investigation to which he invites us, and we think it not inappropriate to suggest to members of the bar that they engage in a fruitless labor in petitioning for a rehearing in this court of a cause properly appealed to a district court of appeal upon a statement of facts contrary to, or outside of, the case stated in the opinion of that court.