In re PUTMAN et al.

(District Court, N. D. California.    May 15, 1911.)

No. 6,780.

1. CORPORATIONS (§ 264*)—STOCKHOLDER'S LIABILITY—ACCRUAL OF CAUSE OF ACTION.

A stockholder's liability under a judgment against the corporation for negligent death accrued not on the date of judgment, but when the accident occurred, within Code Civ. Proc. Cal. § 359, requiring an action to enforce a stockholder's liability to be brought within three years after discovery of the facts upon which the liability was created.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1084–1098; Dec. Dig. § 264;* Limitation of Actions, Cent. Dig. §§ 327, 343, 347, 349.]

2. BANKRUPTCY (§ 314*)—"DEBTS PROVABLE"—OUTLAWED CLAIMS—"PROVABLE CLAIM."

A debt barred by limitations is not a "provable claim" within the bankruptcy act.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 314.*

For other definitions, see Words and Phrases, vol. 6, p. 5746; vol. 2, p. 1882.]

3. CORPORATIONS (§ 340*)—INDEBTEDNESS—STATUTORY LIMITATION—OPERATION—"DEBT."

A judgment against a corporation for negligent death is not a "debt" within Civ. Code Cal. § 309, making directors of a corporation jointly and severally liable, without the benefit of limitations, on debts created beyond the amount of the subscribed capital stock of the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1473–1478; Dec. Dig. § 340.*

For other definitions, see Words and Phrases, vol. 2, pp. 1202–1211, vol. 8, p. 7604.]

4. BANKRUPTCY (§ 315*)—"DEBTS PROVABLE"—JUDGMENTS FOR TORT.

A judgment for negligent death is a debt provable in bankruptcy under Bankruptcy Act July 1, 1898, c. 541, § 63a(1), 30 Stat. 562 (U. S. Comp. St. 1901, p. 3447), as a fixed liability evidenced by judgment.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 315.*]

5. BANKRUPTCY (§ 318*)—"DEBTS PROVABLE"—STOCKHOLDER'S LIABILITY.

A stockholder's liability for an unpaid stock subscription is a debt provable in bankruptcy under Bankruptcy Act July 1, 1898, c. 541, § 63a(4), 30 Stat. 563 (U. S. Comp. St. 1901, p. 3447), as a debt founded on contract.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 318.*]

6. PLEADING (§ 214*)—ADMISSION BY DEMURRER.

Where a petitioner in an involuntary bankruptcy proceeding relies on a judgment, and the petition states that the judgment is in full force, on demurrer to the petition the debtor cannot claim that the judgment is not final because a motion for new trial is pending, since the demurrer admits the truth of the allegations of the petition.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 525–534; Dec. Dig. § 214.*]

7. CORPORATIONS (§ 260*)—UNPAID SUBSCRIPTIONS—CREDITORS' SUITS.

A final judgment against an insolvent corporation though founded on tort is sufficient to sustain a creditor's suit to reach whatever remains unpaid on stock subscriptions.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1051, 1052; Dec. Dig. § 260.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**8. CORPORATIONS ( 259\*)—STOCKHOLDERS—LIABILITY TO CREDITORS.**

There being no privity between a stockholder and the creditors of the corporation, the corporation, but not a creditor, can sue at law to recover unpaid stock subscriptions.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1050–1067; Dec. Dig. § 259.\*]

**9. CORPORATIONS (§ 65\*)—STOCK—NATURE.**

The stock of each shareholder in a California corporation merely represents his proportional interest in the corporation; fixing the amount which he has paid or must pay as his contribution to the corporate assets.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 165–171; Dec. Dig. § 65.\*]

**10. CORPORATIONS (§ 247\*)—STOCKHOLDERS—INDIVIDUAL LIABILITY.**

The governing officers of a corporation cannot release a stockholder from liability to pay his subscription to the prejudice of creditors, except by fair dealing and for a valuable consideration.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 983–997; Dec. Dig. § 247.\*]

**11. BANKRUPTCY (§ 314\*)—"DEBTS PROVABLE"—EQUITABLE CLAIMS.**

Under Bankruptcy Act July 1, 1898. c. 541, § 2, 30 Stat. 545 (U. S. Comp. St. 1901, p. 3420), giving courts of bankruptcy jurisdiction at law and in equity, equitable claims are provable if within the purview of the general rules of equity, even though they have no status at law.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 314.\*]

**12. WORDS AND PHRASES—"CREDITOR."**

A "creditor" is one who has a right to require the fulfillment of a contract or obligation; one to whom any obligation is due.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 2, pp. 1713–1727; vol. 8, pp. 7622–7623.]

**13. BANKRUPTCY (§ 76\*)—INVOLUNTARY PROCEEDINGS—WHO MAY INSTITUTE.**

One holding a judgment against an insolvent corporation for negligent death has an equitable right to enforce payment of a stockholder's unpaid stock subscription, and for that purpose is a creditor who may bring involuntary bankruptcy proceedings against the stockholder.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 76.\*]

**14. BANKRUPTCY (§ 59\*)—ACTS OF BANKRUPTCY—"LEGAL PROCEEDINGS."**

Attachment proceedings are "legal proceedings" within Bankruptcy Act July 1, 1898, c. 541, § 3a(3), 30 Stat. 546 (U. S. Comp. St. 1901, p. 3422), which makes it an act of bankruptcy for an insolvent person to permit a creditor to obtain a preference through legal proceedings.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 59.\*
For other definitions, see Words and Phrases, vol. 5, pp. 4067, 4068.]

**15. BANKRUPTCY (§ 59\*)—"ACT OF BANKRUPTCY"—PERMITTING ATTACHMENT.**

By failing to file a voluntary petition in bankruptcy to vacate an attachment lien before expiration of four months after the attachment one commits an "act of bankruptcy" within Bankruptcy Act July 1, 1898, c. 541, § 3a(3), 30 Stat. 546 (U. S. Comp. St. 1901. p. 3422), making it an act of bankruptcy for an insolvent person to permit a creditor to obtain a preference through legal proceedings.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 81, 82; Dec. Dig. § 59.\*
For other definitions, see Words and Phrases, vol. 1, p. 118; vol. 8, p. 7562.]

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

Petition of Kate C. Putman, Fred C. Putman's administratrix and others, to have J. A. Folger declared bankrupt. On demurrer to the petition. Demurrer overruled.

L. S. Melsted and Edwin H. Williams, for petitioners.
W. W. Kaufman, for J. A. Folger.

FARRINGTON, District Judge. The petition shows that J. A. Folger was a stockholder and director of the Ocean Shore Railway Company. He owned and there had been issued to him 11,550 shares of its capital stock. In his contract of subscription the price of the stock was fixed at $100 per share; only $45 per share, however, has been actually paid. It is alleged that while he was a director he authorized the creation of, and created debts by said company to a total amount of more than $6,000,000, which was $1,000,000 in excess of the entire subscribed capital stock of the company. None of this indebtedness has been paid, and the railway company is insolvent. Three creditors of the corporation, namely, Kate C. Putman, as administratrix of the estate of Fred C. Putman, deceased, J. A. Schroeder and A. Bernier, seeking to charge J. A. Folger as a director and stockholder in said company, have filed a petition in this court asking that he be adjudged a bankrupt. It is stated that on the 2d day of July, 1910, suit was brought in the superior court of San Francisco by one Charles C. Moore against Mr. Folger to recover $21,443.75, alleged to be due from him as joint indorser of a promissory note executed by the Ocean Shore Railway Company. On the same day an attachment was duly levied on all Mr. Folger's stock in the railway company, and later alias writs of attachment were levied on other stocks, and on moneys, credits, and effects belonging to Mr. Folger. This property was of the value of $50,000. The attachments have never been released or discharged, and it is alleged that they are now subsisting liens, and that on "November 3, 1910, said liens will become a preference not to be released or avoided by bankruptcy proceedings, and that said attached property will become and be finally disposed of and sequestrated by" the attaching creditor. This constitutes the alleged act of bankruptcy.

[1] The questions raised by demurrer are: (1) Are the claims of Kate C. Putman and A. Bernier barred by the statute of limitations? (2) If not barred by the statute, is the claim of Kate C. Putman a provable claim? (3) Has the alleged bankrupt committed an act of bankruptcy?

Each of the claims mentioned in the petition represents an indebtedness of the Ocean Shore Railway Company for which Mr. Folger is alleged to be liable: (1) On the ground of his ordinary statutory liability as a stockholder of the railway company to pay a proportionate share of its debts; (2) by reason of his unpaid subscription to the capital stock of the company; and (3) because as a director of the company he created, and permitted to be created, debts against it in an amount exceeding the subscribed capital stock by more than a million dollars. There is no allegation as to the number of creditors, nor is it shown that any creditor, other than the three mentioned,

has appeared and joined in the petition. The alleged bankrupt takes the position that if the claims of any one of the three creditors are not provable within the meaning of the Bankruptcy Act, the petition is defective, and the demurrer must be sustained. Kate Putman relies on a judgment for $10,000 and costs, recovered by her against the Ocean Shore Railway Company, for negligently causing the death of Fred C. Putman, on the 14th day of July, 1910. Mr. Folger's statutory liability as a stockholder accrued, not on the date of judgment, but when the accident occurred, and was therefore barred by the statute of California at the expiration of three years thereafter, and more than three months before the petition in bankruptcy was filed. The petition was filed November 1, 1910. Cal. Code Civ. Proc. § 359; Raynor v. Mintzer, 72 Cal. 585, 18 Pac. 82; Hunt v. Ward, 99 Cal. 612, 34 Pac. 335, 37 Am. St. Rep. 87.

[2] It is well established that a debt outlawed by the statute of limitations is not a provable claim within the meaning of the bankruptcy act. Collier on Bankruptcy (8th Ed.) p. 722; In re Lipman (D. C.) 94 Fed. 353; In re Resler (D. C.) 95 Fed. 804.

The allegations of the petition as to when the notes held by Bernier were executed are not sufficient to enable me to determine with certainty when the statute began to run in favor of the stockholders as against creditors of the corporation.

[3] As to the indebtedness contracted in excess of the subscribed capital stock, section 309 of the California Civil Code declares that:

"The directors of corporations must not * * * create debts beyond their subscribed capital stock * * * the directors under whose administration the same may have happened (except those who may have caused their dissent therefrom to be entered at large on the minutes of the directors at the time, or were not present when the same did happen) are in their individual or private capacity jointly and severally liable to the corporation and to the creditors thereof to the full amount of the * * * debt contracted; and no statute of limitations is a bar to any suit against such directors for any sums for which they are liable by this section."

Clearly the Legislature had in mind only such debts as the directors could voluntarily create or refuse to create; otherwise, directors through an act of negligence for which they are absolutely blameless may become responsible for indebtedness, without having had any opportunity to oppose its creation or to dissent therefrom. The sanctions of this statute are for those directors only who violate its terms; who, acting officially, consent to the creation of debts in excess of the subscribed capital stock of the corporation, or who, being present at the time such debts are created, neglect to express their disapproval in the manner provided. The Putman judgment is not a debt voluntarily created by the directors. It has frequently been held that the word "debt" in similar statutes imposing a personal liability on directors cannot be construed to include a judgment for a tort. Cable v. Gaty, 34 Mo. 573, 86 Am. Dec. 126; Savage v. Shaw, 195 Mass. 571, 81 N. E. 303, 122 Am. St. Rep. 272; Tradesman Pub. Co. v. Knoxville Car Wheel Co., 95 Tenn. 634, 32 S. W. 1097, 31 L. R. A. 593, 601, 49 Am. St. Rep. 943. Mr. Folger's statutory liability as a stockholder of the Ocean Shore Railway Company is barred by the

statute of limitations, and the Putman judgment does not constitute an indebtedness in excess of the subscribed capital stock within the meaning of section 309 of the Civil Code of California. If Mr. Folger is liable to pay the whole or any part of the Putman judgment, his liability rests on the allegation that his subscription to the capital stock of the Ocean Shore Railway Company is not fully paid. When Folger subscribed for his stock, he agreed to pay $100 per share. He still owes $55 per share, or a total sum of $633,250. Respondent says that if he is liable for this unpaid subscription, it is a liability to the corporation itself, and not to Kate Putman; and that Kate Putman's judgment is not in itself a provable claim, either against him or against the Ocean Shore Railway Company, consequently she is not a creditor within the meaning of the bankruptcy act. It is provided in section 59b of the act that:

"Three or more creditors who have provable claims against any person, which amount in the aggregate in excess of the value of securities held by them, if any, to $500 or over * * * may file a petition to have him adjudged a bankrupt."

In section 1, subd. 9, it is said:

" 'Creditor' shall include any one who owns a demand or claim provable in bankruptcy, and may include his duly authorized agent, attorney, or proxy."

[4, 5] Subdivision "a" of section 63 of the same act enumerates five different classes of debts which may be proven and allowed against a bankrupt estate. The two classes pertinent here are:

"(1) A fixed liability as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition against him, whether then payable or not * * *; (4) founded upon an open account, or upon a contract express or implied."

In section 17 it is provided that a discharge in bankruptcy shall release a bankrupt from all his provable debts, with a few specified exceptions, none of which are material to this opinion.

We have here an unsatisfied judgment in favor of the alleged creditor, and an unpaid stock subscription against the alleged bankrupt. Each, in itself, in my opinion is a provable claim; the first, because it is a judgment; the second, because it is founded upon a contract.

"A fixed liability as evidenced by a judgment * * * absolutely owing at the time of the filing of the petition" against the bankrupt is a provable claim.

There is no qualification in this language indicating that Congress intended to distinguish between judgments ex contractu and judgments ex delicto.

Collier in the last edition of his work on Bankruptcy, page 700, says that judgments grounded in tort are almost without exception, provable.

In Remington on Bankruptcy, § 680, it is said that:

"Judgments for personal injury and other similar torts not capable of being presented in form ex contractu are provable, although the unliquidated claims for torts themselves would not be provable." In re Lorde (D. C.) 144 Fed. 320; 1 Remington on Bank. §§ 635, 680; Collier on Bank. p. 706.

[6] It is suggested that the judgment is not final because a motion for new trial is pending. This suggestion must be ignored. Having demurred to the petition, Mr. Folger admits the truth of each allegation therein which is well pleaded. The allegation of the petition is that the judgment is "wholly unpaid, and that it has never been set aside, appealed from, or reversed, but that ever since it was rendered it has been and is now in full force and effect."

[7] It is further alleged that the judgment was rendered January 13, 1910, and duly entered January 14, 1910. The time within which to appeal has expired, and the judgment is apparently final. Such a judgment is a debt of the corporation, and, even though founded on a tort, is sufficient to constitute the basis of a creditor's suit to reach whatever remains unpaid on a stock subscription to an insolvent corporation. 10 Cyc. p. 684; Powell v. Oregonian Ry. Co. (C. C.) 36 Fed. 726, 2 L. R. A. 270.

Morawetz in the second volume of his work on Corporations, § 828, says:

"As the shareholders in a corporation are the real principals and parties in interest who directly or indirectly appoint the corporate agents, and for whose benefit these agents act, they should be held responsible for the torts committed by the corporate agents, like any other principal, to the extent of the capital which the charter provides that they shall contribute."

The judgment in and of itself is a provable claim. Folger's liability to the corporation on his stock subscription is contractual; it can be enforced in an action at law, and is unquestionably provable in bankruptcy. Burke v. Maze, 10 Cal. App. 206, 101 Pac. 438, 440. But can we say the same as to his liability to the creditors of the corporation?

[8] At law a corporation is regarded as a distinct person with whom the shareholder enters into contract to pay for his stock. He is not liable for the corporate debts. There is no privity between the shareholder and the creditors of the corporation. The corporation may, but the creditor cannot, maintain an action at law to recover unpaid stock subscriptions. Patterson v. Lynde, 106 U. S. 519, 1 Sup. Ct. 432, 27 L. Ed. 265. In some cases the creditor of a corporation has been permitted to reach unpaid subscriptions by garnishment, but in such a proceeding his rights are no larger than those of the corporation. But as we shall see presently, the creditor of an insolvent corporation, in equity, may recover from a delinquent shareholder where the corporation itself has no cause of action, either at law or in equity.

[9] Credit of a corporation is based on its capital stock, paid and unpaid. The stock of each shareholder in a California corporation simply represents his proportional interest in the concern; it fixes the amount which he has paid or must pay as his contribution to the corporate assets. O'Dea v. Hollywood Cemetery Assoc., 154 Cal. 53, 72, 97 Pac. 1.

If not paid, he can be required to make his contract good by the corporation itself. Primarily his obligation is to the corporation, but after a corporation becomes insolvent a right accrues to the cred-

itor who has exhausted his remedies against the corporation. He may then bring a suit in equity in behalf of himself and other creditors who may wish to join against any stockholder or stockholders who have not fully paid the amount due on their stock.

In Baines v. Babcock, 95 Cal. 581, 589, 27 Pac. 674, 675 (29 Am. St. Rep. 158), Judge De Haven says:

"It is well settled that a judgment creditor who has exhausted his legal remedies against a corporation may maintain an action against its stockholders to recover, for the benefit of all creditors who may desire to come in and be made parties, the amount due upon unpaid subscriptions for stock, when the corporation neglects or refuses to collect the same."

Morawetz in the second volume of his work on Corporations, § 821, makes this statement:

"Every shareholder in an insolvent corporation is unconditionally liable in equity to contribute the whole amount unpaid on his shares at the suit of any judgment creditor."

In Hatch v. Dana, 101 U. S. 205, 25 L. Ed. 885, a case involving the equitable remedy of a judgment creditor of an insolvent corporation against one of its stockholders, Mr. Justice Strong uses this language:

"The liability of a subscriber for the capital stock of a company is several and not joint. By his subscription each becomes a several debtor to the company, as much so as if he had given his promissory note for the amount of his subscription. At law certainly his subscription may be enforced against him without joinder of other subscribers, and in equity his liability does not cease to be several." See, also, 26 Ency. L. (2d Ed.) 927; 3 Thomp. on Corp. § 3500.

The doctrine that the relation between a judgment creditor of an insolvent corporation and a stockholder who has not fully paid his subscription, is analogous to the relation between a creditor and his debtor's debtor in an attachment proceeding. I cannot follow, nor has my attention been called to any case in California which sustains such a theory. On the contrary, it seems to be the law of this state that such a stockholder may be sued directly by such a creditor, and that the liability of the former to the latter is several. Walter v. Merced Academy Ass'n, 126 Cal. 582, 59 Pac. 136; Welch v. Sargent, 127 Cal. 72, 59 Pac. 319, 322.

In Daggett v. Southwest Packing Co., 155 Cal. 762, 103 Pac. 204, the Supreme Court of California held that a creditor of an insolvent corporation might proceed to subject unpaid subscriptions to his judgment, without first attempting to induce the directors to levy an assessment, or issue any call therefor. The significance of this ruling will be appreciated when it is considered that the corporation itself while solvent could not, under the law, have enforced the payment of such subscriptions without a previous call. After a corporation becomes insolvent, its indebtedness to a stockholder cannot be set off against his unpaid subscription, because the claims pro and con are not in the same interest. Sawyer v. Hoag, 17 Wall. 610, 619, 21 L. Ed. 731.

[10] Again, the obligation of the shareholder to pay his portion of the capital stock is such that the governing officers of the corporation

cannot by any agreement or other transaction among themselves or with the stockholder, release the latter from his obligation to pay his subscription to the capital stock to the prejudice of the creditors of the corporation, except by fair and honest dealing and for a valuable consideration. Sawyer v. Hoag, supra, Vermont Marble Co. v. Declez Granite Co., 135 Cal. 579, 67 Pac. 1057, 56 L. R. A. 730, 87 Am. St. Rep. 143. In the last case the par value of the stock of the insolvent corporation was $100. There was no written subscription, but the parties getting up the company agreed among themselves before incorporating that the corporation should sell its stock to them, fully paid, for $20 per share. This was done, and $20 per share actually paid. The court held that the creditors could not be bound by such an agreement, and that the stockholders nevertheless were liable to the creditors for the unpaid balance on their stock. The stockholders' obligation is certainly much broader than is needed by the corporation. It contains conditions which are designed for the protection of the creditors, and which can be enforced only by or on behalf of the creditors.

In Burke v. Maze, 10 Cal. App. 206, 101 Pac. 438, 440, the Supreme Court of California declares that the stockholder's liability is founded upon his subscription or ownership of stock, upon the existence of creditors, and debts of the corporation requiring the payment of subscriptions in order to pay such debts.

Folger's liability to pay creditors rests on his contract of subscription, and is contractual, even though it can be enforced only in equity. Equity in a proper case can and will look beyond the fiction of a corporate entity, and it will say to the stockholders, you are the real parties in interest; the corporation and its officers were but your agents; you are responsible for the debts created and the liabilities incurred by them, at least to the extent of the capital still due as your contribution to the company's assets.

In Upton v. Englehart, 28 Fed. Cas. No. 16,800, p. 835, Judge Dillon in a case involving the equitable rights of the creditors against the stockholders of an insolvent corporation, uses this language:

"Whoever becomes a stockholder in an incorporated company sustains a threefold relation: First, to the artificial person called the corporation. Second, to the other stockholders in the same company, or in other words, his associates or partners, who by force of statute are clothed with corporate capacity. And, third, to the creditors of the corporation. It is essential to bear these several relations in mind in determining the questions here presented. The capital is supplied by the shareholders, who alone participated in the gains or pecuniary advantages which may accrue from the carrying on of the corporate enterprise. The shareholders are the real parties in interest; the incorporating statute empowering them to contract and be contracted with through the medium of a corporate representative."

In Vermont Marble Co. v. Declez Granite Co., supra, there was a suit by judgment creditors of an insolvent corporation to recover the unpaid balance due from certain stockholders of the company on their stock. The Supreme Court of California said:

"The capital stock is the sole basis of credit. The shareholders, therefore, while entitled to all profits, have no right to the capital until all creditors have been paid. Of course a corporation, while it is a going concern, and

lawfully carrying on the business for which it was organized, may use its funds as freely as any other individual. It is not at all hampered by the idea that it holds its assets in trust for creditors. But when it has ceased to be a going concern, and its assets are to be divided, then the claim of creditors is prior to that of stockholders. Then the court of equity looks beyond the mere fiction of a corporate entity as the ʰ ᵉ debtor. The stockholders are themselves the debtors, but as to them the creditor is deemed to have agreed to look only to a special fund—the corporate assets—for payment."

It might well be said that when Folger subscribed for his stock he impliedly assumed an equitable obligation to the corporate creditors in case the corporation should thereafter become insolvent. He is presumed to have known the law when he entered into the contract; he was aware of the fact that under circumstances like these, equity imposes such a liability. He acted voluntarily. Is it unreasonable to hold that he accepted this equitable liability as one of the terms of his agreement?

[11] There is nothing in the bankruptcy act which indicates any intention on the part of Congress to discriminate against equitable claims. In section 2 of that act, all courts of bankruptcy are invested "with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings * * * to (1) adjudge persons bankrupt; * * * (2) allow claims, disallow claims, reconsider allowed or disallowed claims, and allow or disallow them against bankrupt estates." It has always been the law in England that equitable demands can be proven in bankruptcy, and such claims are provable under our present bankruptcy law if within the purview of the general rules of equity, even though they have no status in courts of law. Collier on Bank. (8th Ed.) pp. 17, 1702.

In re Jordan & Blake (D. C.) 2 Fed. 319, an administrator having used the funds of an estate in the business of a firm of which he was a member, died. The firm was adjudged bankrupt. The administratrix de bonis non was then permitted to prove as a claim against the bankrupt partnership, the balance due from the dead administrator, on the ground that every debt recoverable either at law or in equity, is provable in bankruptcy.

In re James, 131 Fed. 401, 65 C. C. A. 385, 1 L. R. A. (N. S.) 321, it appeared that the wife of a bankrupt had loaned a large sum of money to a partnership of which her husband was a member. It was submitted that she could not file a claim for the money against the estate of her bankrupt husband because, under the law of Massachusetts, of which state all the parties were residents, a married woman could not make contracts with her husband. The Circuit Court of Appeals, however, held that in equity a married woman could contract with her husband in relation to her separate estate, and sue him with regard to it, and that, as a claim enforceable in equity, her claim was provable in bankruptcy. See, also, In re Batchelder & Lincoln Co., 122 Fed. 355, 360, 58 C. C. A. 517.

In Dight v. Chapman, 44 Or. 265, 75 Pac. 585, 65 L. R. A. 793, it was held that the receiver of an insolvent corporation was a creditor of a delinquent stockholder, within the meaning of section 1, subd.

9, of the bankruptcy act, because in attempting to collect unpaid subscriptions he was the agent of the creditors of the corporation.

[12] A creditor, as defined by Bouvier, is one who has a right to require the fulfillment of a contract or obligation; a person to whom any obligation is due.

[13] Under this definition Kate Putman is a creditor. She has a right in equity to require Folger to fulfill a contract. She is also within the more limited definition of the act itself, in that she owns a claim provable in bankruptcy.

[14] Petitioners claim that the alleged act of bankruptcy is within the purview of section 3a, subdivision 3 of the bankruptcy act, which reads in part, as follows:

"Acts of bankruptcy by a person shall consist of his having * * * (3) suffered or permitted, while insolvent, any creditor to obtain a preference through legal proceedings, and not having at least five days before a sale or final disposition of any property affected by such preference vacated or discharged such preference."

Clearly the attachment proceedings are legal proceedings within the meaning of the statute. Property belonging to Folger had been covered by the lien of the attachment for three months and 29 days when the petition in bankruptcy was filed. One day later this lien could not have been discharged or dissolved by the commencement of bankruptcy proceedings. Mr. Moore would then have been free to prosecute his attachment suit to judgment, and to satisfy his judgment out of the attached property, and his right to do so could not be affected in any manner by bankruptcy proceedings. In re Blumenberg (D. C.) 94 Fed. 476; Collier on Bank. (8th Ed.) 787.

[15] It is alleged in the petition that Folger had no legal or equitable defense to this attachment suit. Under the circumstances the lien was a final disposition of the property levied on. Mr. Folger by filing a voluntary petition in bankruptcy before the expiration of the four months could have vacated this lien and preference. This he failed to do, and in so failing, in my judgment, was clearly guilty of an act of bankruptcy.

I am unable to distinguish this case in principle from In re Tupper (D. C.) 163 Fed. 766. In that case a debtor, while insolvent, permitted certain creditors to recover and docket a judgment against her in the county in which she had an equity in real estate. The judgment was permitted to remain a lien until one day before the expiration of four months from the date of docketing, when a petition asking that she be adjudged an involuntary bankrupt was filed by other creditors. She could herself have released the judgment lien by filing a petition in bankruptcy. This she did not do.

Judge Ray, in discussing the contention that this did not constitute an act of bankruptcy, says:

"An execution and levy and an advertised sale thereunder were wholly unnecessary to a final disposition of this property. On the 8th day of March, 1908, but for the filing of the petition in bankruptcy, the real property would have passed irrevocably and absolutely under the lien, and, as Tupper had become and was insolvent, it was not in her power to pay or discharge it. As to the effect of this, see Scheuer v. Smith, etc., 112 Fed. 407, 50 C. C. A.

312. \* \* \* It seems to me that effect is to be given to the words 'or final disposition of any property affected by such preference.' 'Final disposition' is not a gift of the property to some third person or a voluntary trans-.fer to the creditor in satisfaction of the preferential judgment, as that would be merely a sale in payment. Congress had in mind, when it enforced this ·law, the fact that there are different ways or modes of disposing of property, of enforcing executions, judgments and liens, and it referred to the ordinary method of disposition by way of sale, and then used the words 'or final disposition' to cover every other method of passing the control and dominion of the property from the debtor, insolvent person, to another or to others either absolutely or as security to the preferred creditor to the exclusion of his other creditors. The purpose of the law is that no one creditor shall be preferred over the others by an insolvent person, but that all creditors shall share equally except as to honest liens created more than four months prior to the filing of a petition in bankruptcy. It was not intended that a creditor should obtain a lien on all the real estate of·an insolvent person by a judgment filed and docketed, and then lie still, without issuing execution or making a levy and advertising the property for sale for four months and until such judgment had become unimpeachable under the bankruptcy act or otherwise, thereby gaining a preference, an absolute security for the debt, and it might ·be to ·the extent of the entire property of the insolvent person, and thus excluding other creditors from any share in the estate. It has been held that an advertised or even a proposed sale is not in all cases necessary under subdivision 3 of section 3. In re Harper (D. C.) 105 Fed. 900, 5 Am. Bankr. Rep. 567; In re Miller et al. (D. C.) 5 Am. Bankr. Rep. 140, 104 Fed. 764; Scheuer v. Smith & Montgomery Book, etc., Co., 7 Am. Bankr. Rep. 384, 112 Fed. 407, 50 C. C. A. 312."

I can add nothing to the reasoning of Judge Ray. The principle which he enunciates seems to me to be correct. The only question is as to whether it is applicable to the facts in the present case. In the Tupper Case there was a judgment lien; here there is an attachment lien. In each the act of bankruptcy was not merely in suffering the lien, but in failing to discharge it at least five days before a sale or final disposition of the property. In each case it was within the power of the debtor—the alleged bankrupt—to vacate the lien by filing a voluntary petition. In neither case is there anything to indicate that an immediate sale was contemplated, and in each it is a reasonable inference that the purpose was to avoid the operation of the bankruptcy act, and render the lien absolute in favor of the lien creditor— the preferred creditor—against general creditors. True, the judgment and its subsequent docketing added elements of certainty to the Tupper lien, but the difference in the two liens is in degree rather than in kind. If Folger had no defense, either legal or equitable, the attachment lien after the lapse of four months was final and absolute to the extent of any judgment which might be obtained even as the passing of the Tupper property under the judgment lien was a final disposition. The effect was practically the same in each case. As against general creditors, it was, in each case, a final disposition.

If there is here no act of bankruptcy, a method has been found by which an insolvent debtor can accomplish one of the very preferences which the act was designed to prevent.

The demurrer is overruled, and the respondent is granted 20 days to answer.